Olen L. BYRD, Plaintiff-Appellant,

v.

Allan K. CAMPBELL, Chairman United States Civil Service Commission, et al., Defendants-Appellees.

No. 78–3051
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

March 16, 1979.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

C. Lynwood Smith, Jr., Huntsville, Ala., for plaintiff-appellant.

J. R. Brooks, U. S. Atty., Henry I. Frohsin, Chief Asst. U. S. Atty., Birmingham, Ala., Frank J. Faraci, Atty., U. S. Army Missile Materiel Readiness Command Redstone Arsenal, Ala., for defendants-appellees.

Before COLEMAN, FAY and RUBIN, Circuit Judges.

PER CURIAM:

This matter is affirmed on the basis of the Memoranda Opinions issued by the District Court on June 2, 1977 and July 12, 1978, appended hereto.

APPENDIX

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Northeastern Division

| OLEN L. BYRD, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| —vs.— | ) | |
| | ) | NO. CA 76–P–1321–NE |
| MAJOR GENERAL GEORGE E. TURNMEYER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF OPINION

This cause arises upon defendant Turnmeyer's motion for summary judgment, heard at the regularly scheduled motion docket on May 20, 1977. Olen L. Byrd, a former civil service employee of the United States Army Missile Command (MICOM), brings this action against the commanding general at MICOM, Major General George E. Turnmeyer, and United States Civil Service Commissioners Robert Hampton, Georgina H. Shelton and Ludwig Andolsek. He seeks reinstatement or a new administrative hearing to determine cause for termination. Given that this court's review is limited to the administrative record, which is necessarily not contested, the material issues are not in dispute and summary judgment appears an appropriate vehicle for adjudication of the legal issues plaintiff raises.

The record reflects that in late 1975 Mr. Byrd filed a formal grievance dealing with his proposed job abolishment, alleged misassignment and alleged management chastisement. On December 5, 1975, plaintiff received a letter relative to his job assignment which was the subject of the grievance. The letter was delivered by Mr. Leslie Gilreath, who had been Mr. Byrd's immediate supervisor for five or six days. A discussion commenced between the two men concerning Byrd's grievance, which led to altercation and a physical assault by Byrd on Gilreath. The event was witnessed by employees Kennith Neal, Fred Whitman and Bernard Sneed.

Plaintiff immediately returned to his work site, was interviewed by agents of the Criminal Investigation Division and declined to make a statement. Approximately two and one-half hours after the confrontation, Byrd drove approximately thirty miles and admitted himself to a hospital in Hartselle, Alabama. Gilreath sustained a cut on his head for which he was given five stitches at the Redstone Arsenal hospital. Gilreath subsequently went to his own physician where he was hospitalized and treated for dizziness.

Plaintiff returned to work December 15, 1975. Subsequently, he received a notice, dated January 26, 1977, from Mr. Horace Tate proposing to remove him from federal service thirty days after its receipt. The letter stated that the reason for the proposed removal was Byrd's action of "attacking and striking [his] supervisor which resulted in serious bodily harm to him." It also advised him of his right to respond and to review documents in MICOM's custody which related to the basis for removal.

Byrd replied to Mr. Tate by a letter dated February 3, 1976, in which he detailed his recollection of the altercation with Gilreath, claimed provocation, denied that Gilreath's injuries were serious, and expressed his regret for the incident. He supplemented the written reply with a note dated February 2, 1976 from Doctor Will R. Crouch, which stated that Byrd was hospitalized from 12–5–75 to 12–10–75 for acute anxiety neurosis, from which he had apparently recovered. After consideration of these replies, Colonel A. G. Lange, Jr., issued a letter of decision sustaining the removal action and making it effective March 15, 1976.

Byrd appealed the decision to the Federal Employee Appeals Authority (FEAA) of the Civil Service Commission and requested a formal hearing. He submitted names of twenty-three potential witnesses, from which the assistant appeals officer, Earl A. Witten, approved ten by name [1] and permitted plaintiff to select two character witnesses and two witnesses who would testify as to difficulties with supervisor Gilreath. On July 19, 1976, following a May 27 hearing, the FEAA rendered its decision, which affirmed the removal action. Plaintiff has appealed the FEAA's decision to this court, contending that (1) the removal procedure was improper in that the denial of eleven witnesses deprived him of due process of

---

[1.] Initially permission was denied as to witnesses Bate Rainey, Colonel Brandon Parker, Willie Calcote and Luther Adams. After clarification of their proposed testimony, however, these four witnesses were approved along with the earlier approved names of Olen Byrd, Fred Whitman, Kennith Neal, Dr. Crouch, Horace R. Tate, Richard Wright.

law, (2) the stated cause for removal is not supported by substantial evidence, and (3) the penalty of removal is excessive. In appraising these contentions, the court is mindful that the scope of its review is "limited to discerning whether procedural due process requirements were met and whether the agency action was arbitrary or capricious or unsupported by substantial evidence." *Harvey v. Nunlist,* 499 F.2d 335 (CA5 1974). *See* 5 U.S.C.A. § 706.

## REMOVAL PROCEDURE

Although plaintiff's complaint challenges the propriety of the procedure utilized in his removal, its only specified allegation relates to denial of witnesses at the hearing. As plaintiff has never cited, either in oral argument or in the written record, any improper pre-hearing procedures, the court need not review the procedural rights afforded plaintiff prior to his hearing. These rights, as set forth in 5 C.F.R. Part 752, are therefore not at issue.

Plaintiff does contend, however, that the government deprived him of procedural due process by its refusal to approve eleven of his proposed witnesses. In disallowing the witnesses, the appeals officer was acting pursuant to the authority of 5 C.F.R. 772.-307(e)(3), which requires him to exclude unduly repetitious or irrelevant testimony. Unless the appeals officer's decision constituted an abuse of discretion which materially prejudiced plaintiff's presentation at the hearing, this court will not disturb that determination.

■ Plaintiff attempted to prove that (1) he was not responsible for his attack on Mr. Gilreath due to his alleged physical and mental impairment, (2) his attack must be judged with reference to Gilreath's alleged provocation, and (3) his termination was actually retaliation for his earlier griev-

ances, not punishment for the struggle with Gilreath. The record shows that plaintiff was afforded ample opportunity to call witnesses who could testify as to each of the three defenses, and was therefore not deprived of constitutional due process rights.

To support his contentions as to mental and physical impairment, plaintiff was permitted to offer his own testimony and that of Dr. Will Crouch. Plaintiff submitted names of no other persons expected to testify on this issue and all disallowed witnesses were expected to testify on other matters. The appeals officer's denial of certain witnesses, therefore, did not prevent plaintiff from being fully heard on the health impairment issue.

Plaintiff's original witness list also named several persons expected to testify about provocation and retaliation. The appeals officer may have denied certain witnesses offered to testify as to plaintiff's character,[2] as to difficulties with (or harassment by) Mr. Gilreath,[3] or as to retaliation for filing grievances,[4] but he allowed other named witnesses offered for these issues and, indeed, additionally permitted plaintiff to select two character and two harassment witnesses from among those initially denied. Having approved several witnesses of plaintiff's choice, the appeals officer did not act arbitrarily or beyond permissible bounds of discretion in denying proposed witnesses whose testimony would have been merely cumulative or irrelevant.

Consequently, summary judgment on this issue is due to be granted in favor of defendants.

## CAUSE FOR REMOVAL

■ In reviewing the merits of the agency's decision, the court will not disturb its findings if supported by substantial evidence based on the record as a whole. The

---

2. Thomas Newman, Jessie Carroll, Rose Wiggins, Earl Gilley, Will Hillard.

3. Harry Byrd, Roland Gurin, Thomas Newman, Rose Wiggins, Earl Gilley.

4. George Wiggins.

record does indeed contain substantial evidence that the altercation did occur, that it was the cause of the adverse action, and that it warranted at least some adverse action.

At the hearing, the parties stipulated that a struggle erupted between plaintiff and Mr. Gilreath, as a result of which Mr. Gilreath suffered a one inch long and one-sixteenth inch deep wound on the left side of his head above the hairline, that required stitches. Gilreath testified that plaintiff inflicted the wound by means of a scotch tape dispenser. According to Gilreath, he had come to plaintiff's work site to deliver correspondence from the Civilian Personnel Officer, whereupon a discussion ensued that enraged plaintiff. A physical struggle was initiated by plaintiff, who attacked Gilreath with his fists and the tape dispenser. All employees who witnessed the scuffle testified that plaintiff had to be physically pulled away from Gilreath.

Although no witnesses (other than Gilreath) testified to having seen plaintiff wield the tape dispenser, several saw plaintiff strike Gilreath with his fists without observing Gilreath return the blows. Neal, one of the plaintiff's co-workers, testified that immediately after the incident, he saw a tape dispenser on the floor where plaintiff and Gilreath had been talking.

The only testimony at all favorable to plaintiff was that of Fred Whitman, a co-worker, who saw plaintiff hit Gilreath but did not believe plaintiff had a tape dispenser in his hand, and that of plaintiff himself, who could not recall using a tape dispenser and claimed his attack[5] was in reaction to Gilreath's alleged provocative comments. Plaintiff offered no evidence to support his claim that he was removed because of grievances he had filed rather than because of the incident with Gilreath. Although plaintiff attempted to show Gilreath's

harassment and provocation through testimony of two witnesses, Tate and Wright, they testified merely that they took issue with Gilreath's supervisory methods, without citing any specific instances of harassment. No witnesses to the fight had heard enough of the preceding conversation to corroborate or contradict plaintiff's testimony about provocation from Gilreath, who denied having provoked plaintiff.

■ The above summation of testimony relative to the cause for dismissal shows that there was substantial evidence to support the finding that plaintiff had attacked his supervisor and that the attack was the effective basis for the adverse action against him. Since the record must be the factual basis of this conclusion, and the record is necessarily undisputed, summary judgment is appropriate on this issue.

## SEVERITY OF PENALTY

Finally, plaintiff contends that, in light of certain mitigating circumstances, the penalty of removal was excessive. He also cites federal civil service guidelines which recommend a one to three day suspension for a first offense of "fighting or creating a disturbance among fellow employees, resulting in an adverse effect on morale, production, or maintenance of proper discipline."[6] Furthermore, plaintiff asserts that at the time of the incident with Gilreath he was suffering from mental and physical impairment, which should at least partially excuse his conduct and mitigate his penalty.

■ This court will not overrule the refusal to apply the cited civil service guideline, absent a showing of arbitrariness or abuse of discretion. Assuming that the FEAA properly rejected or discounted the evidence as to mitigating circumstances, it was faced with an instance of misconduct

---

5. Plaintiff does not deny the attack, but claims no memory of it due to his blacking out. See his testimony, pages 157–58, 168, in the hearing transcript, Part II.

6. Army Civilian Personnel Regulation 700 (change 14) 751.A.

much more severe than "fighting or creating a disturbance among fellow employees." The FEAA's findings, as above affirmed by this court, reflect that plaintiff attacked and seriously injured a supervisor. Moreover, the guidelines advise, in capital letters, that they are "suggestive only" and "may not successfully meet the demands of all situations." Failure to follow the cited guideline, therefore, does not by itself constitute an abuse of discretion or arbitrary action.

Plaintiff's claim of mitigating circumstances, however, deserves closer scrutiny. At the hearing, plaintiff submitted a sworn and signed statement from Dr. Will R. Crouch, M.D., a general practitioner in Hartselle, Alabama. The statement reports that "on or about December 5, 1975 [the day of the altercation], to December 10, 1975" he treated plaintiff who was hospitalized during that time for acute anxiety neurosis. According to Dr. Crouch, the severity of the anxiety was such that plaintiff was not completely responsible for his behavior or, in his opinion, for any actions committed within a reasonable period of time prior to the hospitalization. Dr. Crouch believed plaintiff then capable of committing irrational acts, but had since recovered. The government offered no evidence to contradict any part of the statement, although it did question witnesses about plaintiff's demeanor at the time of the attack. Responses, however, appear contradictory and, in any event, were not dealt with in the FEAA opinion.[7]

On this review, defendants have attempted to counter Dr. Crouch's statement with affidavits from plaintiff's co-workers, who deny plaintiff exhibited outward signs or complained of stress, anxiety or other health problems in early December 1975. The affidavits, exhibits A–G to the motion for summary judgment, also reveal that the amount of sick leave taken by plaintiff in the months immediately preceding the attack on Gilreath was below the average amount taken by his fellow employees. These affidavits were prepared for the purpose of the summary judgment motion and were not, however, before the FEAA when it rendered its decision.

The FEAA decision concluded that "[w]hile the appellant's acute anxiety neurosis may have put the appellant in a state of extreme agitation, we do not agree that such a diagnosis is medical evidence sufficient enough to support a finding that the appellant was not responsible for his actions." The meaning of this cryptic conclusion is unclear. If meant as a holding that a particular mental impairment does not have the characteristics described by the only medical testimony before the examiner, then the conclusion is not supported by the record. If meant as a rejection of opinion testimony, in the light of other evidence before the examiner, then such a finding should be explicit—the court here noting that the opinion of an expert is not binding under the trier of facts in an administrative proceeding any more than it is in a judicial proceeding. Moreover, it is unclear whether the examiner considered that only total incompetency, such as to excuse the plaintiff from any culpability, would be relevant. If the examiner should find that the plaintiff suffered at the time from partial impairment, that should be so held and considered in connection with the severity of punishment.

The court concludes that the cause is due to be remanded for additional findings as to plaintiff's mental capacity on December 5, 1975, and the significance of his mental infirmity, if any be found, on the culpability of his acts and the severity of the punishment. The court is not, by this remand,

---

**7.** The testimony regarding plaintiff's demeanor and disposition just prior to and during the attack appear in the hearing transcript, Part II, at the following pages, with witnesses indicated in parenthesis: page 11, line 14 (Gilreath); page 72, line 14 (Whitman); page 73, line 4 (Whitman); page 85, line 17 (Neal); page 100, line 5 (Sneed); page 139, line 20 (Byrd); page 142, line 7 (Byrd); page 148, line 17 (Byrd); page 157, line 25 (Byrd).

suggesting what those findings and conclusions should be, and the examiner may determine to re-open the record to take additional evidence, including that submitted by defendants in connection with the motion for summary judgment, on this issue.

In accordance with the foregoing memorandum of opinion, judgment shall be entered by separate order.

This the 2nd day of June, 1977.

(s) <u>Sam C. Pointer Jr.</u>
United States District Judge

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Northeastern Division

OLEN L. BYRD,

                     Plaintiff,

    —vs.—

ALLAN K. CAMPBELL, Chairman of the United States Civil Service Commission, et al.,

                  Defendants.

)
)
)
)
)
)
)
)
)

NO. CA 76–P–1321–NE

---

## MEMORANDUM OF OPINION

This cause arises upon defendant Allan K. Campbell's motion for summary judgment. The factual background of the litigation is set out in this court's Order and Memorandum of Opinion which were filed June 2, 1977. By that order, summary judgment was granted in defendants' favor on all but one of the issues presented. The remaining issue, relating to the severity of punishment imposed on plaintiff Byrd in light of his possible mental infirmity at the time of the incident in question, was remanded to the Federal Employee Appeals Authority (FEAA) of the United States Civil Service Commission for additional findings concerning plaintiff's mental condition on December 5, 1975.

Following the court's remand, the record of plaintiff's administrative appeal was re-opened for receipt of additional evidence, and a supplemental hearing was held on September 15, 1977. Subsequently, the FEAA rendered a decision, dated November 14, 1977, affirming the original penalty of removal.

▇ As noted by the court in the first memorandum of opinion issued in this case, the "scope of judicial review of agency actions is limited to discerning whether procedural due process requirements were met and whether the agency action was arbitrary or capricious or unsupported by substantial evidence." *Harvey v. Nunlist,* 499 F.2d 335, 336 (5th Cir. 1974). In this case, the court has reviewed the later proceedings of the FEAA and is satisfied that the supplemental hearings were carried out in conformity with the remand order. The court has determined, further, that there is substantial evidence to support the findings of the FEAA, and that there was no abuse of discretion by the Appeals Authority in its affirmance of the penalty of dismissal. Consequently, defendant Campbell is entitled to judgment as a matter of law.

In accordance with the foregoing memorandum of opinion, judgment shall be entered by separate order.

This the 12th day of July, 1978.

(s) <u>Sam C. Pointer Jr.</u>
United States District Judge