Rose WOOD, Plaintiff,

v.

Secretary Michael CHERTOFF,
Department of Homeland
Security, Defendant.

No. EP–05–CV–0480–KC.

United States District Court,
W.D. Texas,
El Paso Division.

Nov. 21, 2007.

Antonio V. Silva, Law Offices of Antonio
V. Silva, El Paso, TX, for Plaintiff.

Eduardo R. Castillo, Assistant United States Attorney, El Paso, TX, for Defendant.

## ORDER

KATHLEEN CARDONE, District Judge.

On this day, the Court considered Defendant's Motion for Summary Judgment and Motion to Strike Plaintiff's Summary Judgment Evidence. For the reasons set forth herein, Defendant's Motion to Strike is **DENIED** as moot and Defendant's Motion for Summary Judgment is **GRANTED**.

## I. BACKGROUND

Plaintiff Rose Wood ("Wood") began working for the United States Customs Service [1] on May 16, 1986, as a co-op inspector while she attended college. Decl. of Rose Wood Given Under Penalty of Perjury ("Wood Decl.") ¶ 4. In October 1988, Wood began working full-time as inspector in El Paso, Texas. *Id.* ¶ 7; Def.'s Proposed Undisputed Facts ("Def.'s Facts") ¶ 5. In 2002, Wood was promoted to a supervisory position and transferred to Fabens, Texas. Def's Facts ¶ 6. In February 2003, Wood accepted a position in Nassau, Bahamas, and transferred there along with her children. *Id.* ¶¶ 7–8. Around this time, Wood and her husband encountered marital problems, resulting in the husband's cutting off financial support and creating a financial hardship for Wood. *Id.* ¶¶ 8–9.

Wood was not happy in Nassau so she sought to transfer back to El Paso. *Id.* ¶ 11. Wood stated that she was subjected to a hostile work environment in Nassau. *Id.* ¶ 10. In order to return to El Paso, Wood required permission from Port Director David Longoria ("Longoria") as well as Director of Field Operations for El Paso, Luis Garcia ("Garcia"). *Id.* ¶¶ 12, 13. The supervisors granted permission, Wood returned to El Paso at agency expense, and she began work in El Paso on September 23, 2003. *Id.* ¶¶ 11, 14.

Wood used her government-issued credit card to pay for her moving expenses and, according to CBP policy, she was supposed to seek reimbursement by means of a voucher within five days of travel for the expenses incurred.[2] *Id.* ¶¶ 65–66. CBP policy also states that employees pay the charges incurred on their government-issued credit cards within the required time frames. *Id.* ¶ 67. Wood did not submit her reimbursement voucher until February 3, 2004, almost five months after the travel. *Id.* ¶ 68; Wood Decl. ¶ 28. She did not pay her credit card until after she received a warning from her supervisor because she was more than 163 days late in paying her credit card bill. Def.'s Facts ¶ 70. Wood first received bills for the expenses in question on August 2, 2003, making her first partial payment in February 2004, and paying the remainder sometime after April 8, 2004, when it was referred to collections. *Id.* ¶ 77–78; *see* Wood Decl. ¶ 29.

Upon returning to El Paso, Wood began working at the Paso del Norte Bridge.

**1.** In March, 2003, the functions of the United States Customs Service were transferred to the Department of Homeland Security, United States Customs and Border Protection ("CBP").

**2.** Though Wood denies this proposed undisputed fact, her own version of the facts actu-

ally support these events. *See* Wood Decl. ¶¶ 22–30. Wood acknowledges that CBP was paying for the move, that she was required to submit a travel voucher, and that she was to do so in an expedient manner. *See id.* ¶¶ 25–26, 30.

Def.'s Facts ¶ 22. Some time in October 2003, Wood traveled, with permission, to the Ysleta bridge to observe operations there. *Id.* ¶ 23; Wood Decl. ¶ 39. While visiting the bridge, Wood saw a vehicle belonging to her or her family parked in the in the employee's parking lot. Def.'s Facts ¶ 24; Wood Decl. ¶ 32. She had previously reported this vehicle stolen. Wood. Decl. ¶ 32. For an unexplained reason, Wood believed that her husband was "the one who had the vehicle" and was concerned that her husband would be arrested because the police were involved. *Id.* ¶ 35. Wood attempted to speak with the Port Director, David Longoria for permission to attend to this problem; however, Longoria was unavailable. *Id.* ¶ 33. Instead she spoke with Frederick Keyser, the next in the chain of command. *Id.* ¶¶ 33, 35; Def.'s Facts ¶ 27. Wood asserts and Defendant avers that Acting Chief Frassa granted Wood some sort of permission to contact the police regarding the location of the vehicle in question. Def.'s Facts ¶ 25; Wood Decl. ¶ 35. Wood also asserts that she requested permission from Keyser to "follow up" and that Keyser advised her to report the vehicle's location to the police. Wood Decl. ¶¶ 35, 37. Defendant, on the other hand, states that Keyser advised Wood that she could deal with the situation as a private citizen, but that he never granted her any type of leave to deal with the vehicle on official time, nor to take any official action. Def.'s Facts ¶¶ 35–36.

Next, Defendant states that on November 21, 2003, Wood contacted Sonia Kerr ("Kerr"), a CBP officer who Wood had befriended while she worked in the Bahamas, and asked Kerr to obtain a copy of Wood's husband's Customs Declaration Form (Form 6059–B). *Id.* ¶¶ 52, 55–56. Kerr refused. *Id.* ¶ 56. In order to properly request her husband's 6059–B form, Wood would need an official reason. *Id.* ¶¶ 58, 61. Wood denies ever calling Kerr to request the 6059–B form. *Id.* ¶ 59; Wood Decl. ¶ 16. Rather she explains that she "feel[s]" that Ms. Kerr (an African–American) made this statement simply to back Ms. Sutton burke [sic], who is also an African–American." Wood Decl. ¶ 16.

Defendant alleges that Wood on two separate occasions accessed without authorization the Customs Overtime Scheduling System ("COSS") in order to obtain information about her husband's work schedule.[3] Def.'s Facts ¶ 82. Wood twice sent her supervisors emails of her husband's work schedule, which she had obtained from COSS. *Id.* ¶ 84. When logging into COSS, users are greeted with a warning banner that government systems may only be used for official government purposes. *Id.* ¶ 86. In fact, a supervisor had warned Wood not to use COSS for personal business. *Id.* ¶ 89. Wood, however, asserts that she inadvertently came across her husband's schedule when she typed her own last name "Wood" into COSS for work purposes only. Wood Decl. ¶ 51. She denies intentionally accessing COSS to obtain information on her husband between October of 2003 and June of 2004. *Id.* ¶ 54. She explains that when she mistakenly came upon her husband's schedule and discovered certain discrepancies, she reported these improprieties to the proper officials. *Id.* ¶ 52.

On September 29, 2004, Martin Childs, a member of CBP Disciplinary Review Board ("DRB") issued a notice proposing

---

3. Defendant states that the name of the system is "Customs Officers Scheduling System," while Wood states that the system is called "Customs Overtime Scheduling System." Wood Decl. ¶ 67; Def.'s Facts ¶ 83. Though of little significance, it appears from the record that Wood is correct.

that Wood be removed from employment based upon six charges. Def.'s Mot. for Summ. J. Ex. 2, 2 (Initial Decision of Merit Systems Protection Board ("MSPB") 2). The six charges included 1) Failure to Follow Instructions (two specifications); 2) Conducting Personal Business on Official Time; 3) Attempting to Obtain Official Information for Other Than Official Purposes; 4) Failure to Pay a Government Issued Travel Card in a Timely Manner; 5) Making a Misrepresentation to a Supervisor; and 6) Obtaining COSS Information for an Unauthorized Purpose. Def.'s Facts ¶ 16. This proposal was forwarded to Garcia, who was the deciding official on the proposed disciplinary action. *Id.* ¶ 17. Wood responded to this proposal. *Id.* ¶ 18. Based upon the evidence obtained from the investigation, as well as Wood's response, Garcia sustained four of the charges against Wood: Conducting Business on Official Time; Attempting to Obtain Official Information for Other than Official Purposes; Failure to Pay a Government Issued Travel Card in a Timely Manner; Obtaining COSS Information for an Unauthorized Purpose. *Id.* ¶ 19. Rather than terminating Wood, as proposed by the DRB, Garcia decided to demote Wood, lowering her grade to a non-supervisory position. *Id.*

On February 24, 2005, Wood filed an appeal with the MSPB challenging this demotion. *Id.* ¶ 3. On August 26, 2005, Judge Carnes issued an Initial Decision, affirming the decision of the agency and concluding that Wood had committed the acts of misconduct alleged, that she failed to establish that the decision was motivated by discriminatory or retaliatory motive, and that the penalty imposed was reasonable. *Id.* ¶ 3. Wood appealed the MSPB decision on September 20, 2005, to the Equal Employment Opportunity Commission ("EEOC"), which affirmed the MSBP decision on November 28, 2005. *Id.* ¶ 4.

Wood then filed her claim in this Court on December 21, 2005. Pl.'s Compl. 1. Defendant answered on March 27, 2006, and moved for summary judgment on April 17, 2007. Def.'s Original Answer 1; Def.'s Mot. for Summ. J. 1. Wood responded on June 16, 2007. Pl.'s Resp. 1.

## II. DISCUSSION

### A. Standard

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir.2006). The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Ellison,* 85 F.3d at 189.

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1046–1047 (5th Cir.1996). If the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). The

nonmovant's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Warfield,* 436 F.3d at 557 (quoting *Freeman v. Texas Dep't of Crim. Justice,* 369 F.3d 854, 860 (5th Cir.2004)). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

### B. Motion to Strike

The Court addresses a portion of Defendant's Motion to Strike in discussing Wood's discrimination claim below. However, because the Court has not relied on the challenged evidence, and because this evidence, even if considered, does not affect the Court's decision, the Motion is denied as moot. *See Jinks v. Advanced Protection Sys., Inc.,* 162 F.Supp.2d 542, 545 (N.D.Tex.2001).

### C. Appeal from MSPB Decision

Defendant argues that this Court should affirm Judge Carnes's decision that upheld Wood's demotion and that denied her claims of discrimination and retaliation because the decision was supported by the evidentiary record. Def.'s Mot. for Summ. J. 7. Wood, however, argues that this Court should reverse Judge Carnes's decision because he "ignored evidence, misstated evidence, and credited witnesses who lacked credibility." Pl.'s Am. Resp. 3.

■ This is a "mixed case" appeal, in which Wood seeks review of claims of dis-

crimination on the basis of race, color, religion, sex, national origin, handicap or age as well as claims not involving discrimination. 29 C.F.R. § 1614.302(a)(2); *see Aldrup v. Caldera,* 274 F.3d 282, 286–87 (5th Cir.2001). As a mixed case appeal, this Court reviews the discrimination claims *de novo,* and it reviews the non-discrimination claims based upon the administrative record. *Aldrup,* 274 F.3d at 287 (citing 5 U.S.C. § 7703(c)). Courts will uphold the MSPB determinations unless they are "clearly arbitrary and capricious, unsupported by substantial evidence, or otherwise not in accordance with law." *Id.* "In reviewing the merits of the agency's decision, the court will not disturb its findings if supported by substantial evidence based on the record as a whole." *Byrd v. Campbell,* 591 F.2d 326, 329 (5th Cir.1979). An arbitrary decision is "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Corry v. Liberty Life Assur. Co. of Boston,* 499 F.3d 389, 398 (5th Cir.2007) (citation omitted). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The court may not reweigh the evidence or substitute its own judgment for that of the MSPB even if this court finds that the evidence weighs against the MSPB's decision. *Warncke v. Harris,* 619 F.2d 412, 416 (5th Cir.1980).

#### 1. Challenge to demotion

■ Judge Carnes held a hearing on this matter, considered witness testimony and other evidence, and issued a twenty-seven page, written opinion explaining his decision. *See generally* Initial Decision of MSPB. In his opinion, Judge Carnes made findings of fact, weighed the evidence, and

made conclusions of law as to the four charges of misconduct against Wood. *Id.*

With regard to the first charge of Conducting Personal Business on Agency Time, Judge Carnes found that Wood did not have permission to use official time to take care of personal matters related to the recovery of the vehicle which she had reported stolen. *Id.* at 2. Judge Carnes listened to and evaluated the testimony of F.W. Keyser, the acting port director, as well as that of Robert Frassa, a supervisor working at Paso del Norte Bridge. *Id.* at 4–5. Judge Carnes explained that Frassa's testimony, which was more favorable to Wood, was internally inconsistent and varied from earlier statements. *Id.* at 7. On the other hand, Judge Carnes found that Keyser's testimony was internally consistent and was consistent with Wood's own version of their conversation. *Id.* Thus, Judge Carnes found that Keyser never actually gave permission to Wood to resolve the issue with the car. *Id.* at 8. The Judge also found that even crediting Wood's version of Keyser's statements, the plain meaning of these remarks still did not authorize Wood to use official time to conduct her personal business. *Id.* Because Wood acted without permission, therefore, Judge Carnes concluded that Wood had committed the misconduct charged. *Id.*

Next, Judge Carnes considered the charge of Attempting to Obtain Official Information for Other than Official Purposes. This charge stems from Wood's alleged attempt to obtain a copy of her husband's Customs Declaration Form from Kerr, her former colleague in the Bahamas. *Id.* at 8–9. Judge Carnes determined that to resolve the issue he had to determine whether Kerr was telling the truth when she said that Wood telephoned her and asked her for information on Wood's husband's Customs Declaration Form. *Id.* at 10. The judge noted that there was no evidence to support Wood's claim that Kerr had fabricated the event, and he found Kerr to be believable after listening to her testimony. *Id.* Thus, Judge Carnes upheld this charge as well. *Id.* at 11.

Judge Carnes next addressed the charge of Failure to Pay a Government Credit Card in a Timely Manner. *Id.* Wood was charged with failing to pay her government Citibank credit card balance of $2,403.29 on or about October 3, 2003. *Id.* The balance stemmed from charges related to her move back to El Paso from the Bahamas, incurred in late August and early September 2003. *Id.* at 13. The Judge found that Citibank notified Wood that it was cancelling her account in December 2003; still Wood failed to pay the balance. *Id.* at 11. The Judge also found that in February 2004, Wood did make a partial payment, but, on April 8, 2004, Citibank transferred her account to its recovery group. *Id.* At the hearing, Wood admitted that she did not pay this bill in a timely fashion, explaining that she was having extreme financial difficulties stemming from her divorce. *Id.* at 12. Though CBP had stated that it would pay for these travel expenses, Wood did not file a travel voucher for reimbursement until February 3, 2004. *Id.* at 13. CBP had warned Wood to pay the outstanding bill and warned her that disciplinary action could result from her failure to pay. *Id.* Based upon this evidence, Judge Carnes sustained this charge. *Id.*

Finally, Judge Carnes considered the charge of Obtaining COSS Information for an Unauthorized Purpose. *Id.* This charge stems from two emails that Wood sent to her supervisors which included information about her husband's work schedule, which she obtained from the COSS system. *Id.* The government claimed that she lacked authority, and was without official authori-

zation, to obtain this information about her husband. *Id.* Wood acknowledged that she had accessed her husband's COSS account but she claimed that this access was inadvertent-she had simply entered her own last name "Wood" into the system and the system returned her husband's information instead of hers. *Id.* at 14. Wood admitted that she reviewed his work time and allegedly discovered fraud, that her husband was logged as working when he was actually picking up their children. *Id.* Judge Carnes heard testimony from two supervisors that COSS is for official use only and that Wood had been warned that using COSS for personal reasons could get her into trouble. *Id.* Judge Carnes found that it was clear from the emails that Wood had scrutinized the information that she had obtained from COSS. *Id.* Judge Carnes also found that it was unlikely that Wood had accessed her husband's account by mistake because she had been using the system for years and knew it well and because she was in the middle of a bitter divorce battle with her husband. *Id.* at 15. He stated that even if the initial access was a mistake, still Wood proceeded to scrutinize the information she obtained, to the point of including that information in emails to her supervisors. *Id.* In addition, Judge Carnes held that the fact that Wood had asked that she be treated the same as her husband at work, which she alleged included preferential scheduling and time off, demonstrates that Wood was interested in more than merely reporting fraud to management. *Id.* Thus, the Judge sustained this charge as well. *Id.*

In her Response to the Motion for Summary Judgment, Wood does not claim that Judge Carnes made any specific mistake of law, or failed to consider any specific evidence. She does not argue or present facts to show that Judge Carnes's decision was clearly arbitrary and capricious, not supported by substantial evidence, or was contrary to law. Rather she makes a conclusory, sweeping statement that the Judge "ignored evidence, misstated evidence, and credited witnesses who lacked credibility." Pl.'s Am. Resp. 3. She reiterates her denial that she never contacted Kerr to obtain her husband's Customs Declaration Form. *Id.* at 5. She claims that her supervisor in the Bahamas discriminated against her. *Id.* She states that her pending divorce diverted her attention from her Citibank bill and her travel voucher. *Id.* at 7. She again claims that she had permission to take care of the vehicle on official time. *Id.* at 8. This was the vehicle she had previously reported stolen and that she discovered by chance while working at the Ysleta bridge, an unusual work assignment that she had requested that same day. *Id.* at 8–9. Finally, she argues that she simply did not access COSS purposely. *Id.* at 13. Overall, she argues that "the agency 'saved' up alleged minor actions" against her instead of dealing with them as they occurred. *Id.* at 15. She then proceeds to list the names of male colleagues who allegedly violated the same rules that she did, but unlike her, were never disciplined for the violations. *Id.*

It is clear to this Court that Judge Carnes made his determination affirming the agency action demoting Wood only after holding a hearing, listening to witness testimony, evaluating that testimony, considering the applicable law, and explaining these findings in a detailed written opinion. Given that Judge's thorough review and given the fact that Wood has not provided any evidence or factual support tending to show that Judge Carnes ignored relevant evidence, made an arbitrary or capricious holding, or misapplied the law, this Court affirms Judge Carnes's decision. Wood's general denials are insufficient to call Judge Carnes's careful and clearly-ex-

plained findings and conclusions into question.

## 2. Employment discrimination claim

Wood next asserts that CBP discriminated against her based on her gender. Defendant argues that Wood cannot establish a prima facie case of gender-based discrimination because she cannot show that similarly situated male employees were treated more favorably. Def.'s Mot. for Summ. J. 9. Defendant also claims that it fired Wood because she engaged in several acts of misconduct. *Id.* at 12. Wood argues that the agency favored her husband over her and that other male supervisors were in fact treated more favorably. Pl.'s Resp. 18–19.

The Court reviews such discrimination claims *de novo. Aldrup*, 274 F.3d at 287 (citing 5 U.S.C. § 7703(c)). Title VII prohibits an employer from discriminating against employees on the basis of race, color, religion, sex, or national origin. *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 328 (5th Cir.1998) (citing 42 U.S.C. § 2000e–2(a)(1)). Federal employees are likewise protected from discrimination. *Brazoria County, Tex. v. E.E.O.C.*, 391 F.3d 685, 690 (5th Cir.2004) (citing 42 U.S.C. § 2000e–16).

■ A plaintiff can prove a claim of discrimination by either direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). Absent direct evidence of discrimination, a court employs the analytical framework set forth in the case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Russell*, 235 F.3d at 222. Under the traditional *McDonnell Douglas* standard, the plaintiff establishes a prima facie case by proving that: (1) she is a member of a protected class, (2) she was qualified for her position, (3) she was subjected to an adverse employment action, and (4) she was replaced by someone outside the protected class or, in the case of disparate treatment, others similarly situated were treated more favorably. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir.2001). The burden to demonstrate a prima facie case is not an onerous one. *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir.1999) (explaining that only a minimal showing is required to establish a prima facie case of discrimination). Once the prima facie case is established, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Okoye*, 245 F.3d at 512. If the defendant is able to articulate such a reason, the burden shifts back to the plaintiff to prove that the defendant's legitimate, non-discriminatory reason for the adverse employment action is pretextual. *See id.*

### a. Prima facie case

■ In this case, the first three elements of the prima facie case are not at issue. *See* Pl.'s Am. Resp. 19; Def.'s Mot. for Summ. J. 9. The only question is whether others outside of Wood's protected class as a female were treated more favorably.

In support of this claim, Wood has identified a number of male colleagues who allegedly were treated more favorably than she was. Pl.'s Am. Resp. 18–22. Five of these male colleagues allegedly conducted personal business on government time, four others allegedly were delinquent in paying the balance of their government-issued credit cards, and one other used his government-issued credit card for personal purposes. *Id.;* Pl.'s Resp. to Def.'s Proposed Undisputed Facts

19. Wood also generally claims that male supervisors access COSS for personal reasons and that CBP "saved up" minor claims against her to build a stronger case against her. Pl.'s Resp. to Def.'s Proposed Undisputed Facts 19.

 By showing that an employer gave "preferential treatment under 'nearly identical' circumstances" to another employee, a plaintiff may support her claim of disparate treatment. *Okoye*, 245 F.3d at 514. Such identical circumstances requires that the misconduct charged among similarly situated employees be nearly identical. *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir.2004).

Wood's evidence is closer to office gossip than it is to evidence admissible in a federal court. It consists primarily of vague statements about male colleagues who allegedly received more favorable treatment after engaging in unseemly acts reminiscent of a Danielle Steel novel. The Court is not naive to the reality that such events can occur in the workplace; nevertheless, Wood's evidence in this regard is so lacking in context and particulars that it is of little value for comparison. In addition, the evidence is either inadmissable as hearsay or is without any apparent basis in personal knowledge. *See* Fed.R.Evid. 801(c), 802, 602. Thus, the Court cannot consider it. However, even if the Court were to find these statements to be admissible, still Wood has failed to show that management was aware of much of this misconduct or what disciplinary action was actually taken against these individuals. Again, the evidence lacks context. Nevertheless, the Court recognizes that the burden to establish the prima facie case is not an onerous one and finds that Wood has met her burden with mere allegations of preferential treatment.

### b. Legitimate non-discriminatory reason for demotion

 As Wood has established a prima facie case of discrimination, Defendant must counter with a legitimate non-discriminatory reason for Wood's demotion. *See Okoye*, 245 F.3d at 513. In order to meet its burden, Defendant must provide both "clear and reasonably specific reasons" for its actions. *Id.* (citing *Burdine*, 450 U.S. at 258, 101 S.Ct. 1089).

Defendant responds that it demoted Wood because she engaged in acts of misconduct by violating the several work rules described above. Def.'s Mot. for Summ. J. 12. The Fifth Circuit has held that the violation of work rules is a legitimate non-discriminatory reason for an adverse employment action. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 & n. 4 (5th Cir.1995); *Waggoner v. City of Garland*, 987 F.2d 1160, 1165–66 (5th Cir.1993). Wood must respond with evidence that showing that Defendant's explanation was pretextual. *See Okoye*, 245 F.3d at 513.

### c. Legitimate reason as pretext

As discussed with regard to the prima facie case, Wood has identified a number of male colleagues who were allegedly treated more favorably than she was. Pl.'s Am. Resp. 18–22. By showing that an employer gave "preferential treatment under 'nearly identical' circumstances" to another employee, a plaintiff may support her claim of disparate treatment. *Okoye*, 245 F.3d at 514. Such identical circumstances requires that the misconduct charged among similarly situated employees be nearly identical. *Perez*, 395 F.3d at 213.

 Again, Wood's evidence of this preferential treatment, the bald statements of inappropriate conduct by her male colleagues, is inadmissable hearsay and without any apparent basis in personal

knowledge. *See* Fed.R.Evid. 801(c), 802, 602. Thus the Court cannot consider this evidence. Still, were the Court were to consider the statements, Wood has failed to demonstrate that management was aware of this misconduct and that lesser disciplinary action was taken against these individuals. Thus, she fails to establish that she and these colleagues were similarly situated. Nor has Wood demonstrated that these other employees were preferentially treated under nearly identical circumstances. Indeed, as to the claims of failure to timely pay the government credit card, the Court notes that Wood has provided no information as to when her colleagues' alleged delinquencies took place, how much money was at issue, or how long the bill was overdue. As to the general allegations of male supervisors inappropriately accessing COSS, Wood provides no individual names or dates nor even the basis of her knowledge. Without such facts, Wood has not met her burden of showing that she and her male colleagues were similarly situated or that these men were more favorably treated than she was.

▇ In fact, based upon what little information Wood has provided about her colleagues, they do not appear to be similarly situated to Wood. Wood was charged with engaging in four different acts of misconduct in October and November 2003. According to Wood, however, each of the individuals to whom she compares herself had engaged in only one of these acts of misconduct. Thus, by Wood's own account, she was not only not similarly situated to these men, but she had also violated more rules than any single one of them. Her own evidence tends to show that she was more culpable, or that at least her supervisors thought she was more culpable. And even if Defendant was completely mistaken in believing the charges against Wood were true, still this Court must find for Defendant unless Wood can show that the articulated reasons-that Wood engaged in acts of misconduct-were a pretext for the true discriminatory reason. *See Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir.1991) ("Further, even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue."). Wood has made no attempt to show that Defendant's articulated reasons were made in bad faith, that it had a bad motive. Her challenges to Judge Carnes's findings that she engaged in various acts of misconduct highlight the varied circumstances, numerous individuals, and far-flung locales that were involved in the alleged wrongdoings. To show bad motive, Wood would have to challenge the combined statements and actions of Kerr[4] and Sutton–Burke in the Bahamas, of Keyser and many other supervisors in El Paso, and of the DRB in Washington, D.C. While a far-reaching conspiracy is within the realm of possibil-

---

4. Wood states that Kerr fabricated the claim that Wood had asked Kerr to obtain a copy of Wood's husband's Custom Declaration form. Wood Decl. 16. Wood explains that "Ms. Kerr (an African–American) made this statement simply to back Ms. Sutton burke [sic], who is also an African–American." (first parenthetical in original). *Id.* Wood's inappropriate remarks do nothing to support her case. While it is certainly possible that Kerr fabricated her story, Wood offers no evidence to show as much. But Wood's unsupported, outrageous explanation that Kerr lied for her supervisor because they are both African–American is unsuitable in a pleading before this Court. Ironically, in employment discrimination cases, it is the defendant employer who is usually alleged to have made racist remarks, demonstrating discriminatory animus; that Plaintiff herself makes such remarks in support of her discrimination claim baffles the Court.

ity, Wood has failed to present any evidence that any one of these individuals acted in bad faith. Accordingly, her claim of discrimination fails.

The same is true with regard to Wood's allegation that her husband was treated more favorably. All of Wood's remarks about this disparate treatment are conclusory statements simply proclaiming that her husband received favorable treatment. Wood fails to show how the two were similarly situated at work or how the treatment her husband had received was more favorable than the treatment she received.

Wood also contends that CBP "saved up" the charges to assemble a stronger case against her and that similarly situated males faced no discipline at all. Pl.'s Resp. to Def.'s Proposed Undisputed Facts 18. In fact, all of the charges of misconduct took place between October and November 2003 and possibly June 2004. The first charge of misconduct, the incident with the missing automobile at the Ysleta bridge, took place in October 2003. The event involving Wood's attempt to get her husband's Custom Declaration Form from Kerr took place in November 2003. Wood's failure to timely pay her government-issued credit card took place in October 2003 when the bill was due and continued for nearly a year until the balance was paid. Finally, as to the misconduct related to the improper use of COSS, Wood apparently improperly accessed COSS in October and November 2003, and sent the emails containing the COSS information to her supervisors in June 2004. Wood states that the proposal to discipline her was not circulated until September 29, 2004, almost one year from the date that the majority of the incidents allegedly took place.

Assuming that the supervisors at CBP in fact "saved up" Wood's infractions, the Court finds this allegation to be irrelevant. Wood does not provide evidence that CBP did not "save up" infractions against similarly situated males and thus fails to establish preferential treatment with regard to the handling of infractions. Nor has Wood persuaded the Court that CBP was engaging in anything invidious by the alleged "saving up" of her misdeeds. Wood has not provided any information as to the usual length of time between violations of rules and the ensuing reprimand or punishment. In addition, two of the infractions were ongoing, the failure to pay the credit card bill, and the COSS access, thereby shortening the time between infraction and punishment. The Court is not in a position to second guess CBP policies or procedures based upon on the meager pleadings that Wood has provided. Again, she has not shown the Court any evidence of bad motive on the part of CBP. She simply orders the Court to conclude, based upon her naked claims alone without detail or context, that nefarious forces were working against her. The law requires more.

### 3. Retaliation claim

██ Wood next claims that she was retaliated against for engaging in protected EEOC activity. Though she doesn't specify just what activity for which she was retaliated against, she does list four different instances when she engaged in protected activity. Specifically Wood asserts that she filed EEOC claims in January 27, 2000, November 20, 2000, and March 15, 2002, and she states that she spoke with Longoria in June 2003, about problems she was having with a hostile work environment in Nassau. Pl.'s Am. Resp. 23; Wood Decl.¶¶ 45, 48.

Defendant argues that Wood provides no evidence or argument that the DRB, which was the entity that recommended

termination, was aware of her engaging in protected activity. Def.'s Mot. for Summ. J. 14. It goes on to argue that Garcia, the individual who decided to demote Wood instead of terminating her, first learned of Wood's protected activity only after the DRB recommended her termination. *Id.* Finally, Defendant states that Wood was not demoted until February 2005, more than two years after Wood had informed Garcia of her engaging in protected activity.[5] *Id.* at 15. Defendant argues that such a long lapse in time, in combination with no other evidence precludes a claim of retaliation. *Id.*

Wood responds that her supervisor, Longoria, was aware of her engaging in protected activity and they even discussed the matter in June 2003 while talking about Wood's transfer back to El Paso. Pl.'s Am. Resp. 23. Wood then argues, "Ms. Wood having raised a genuine factual dispute as to whether supervisor(s) knew about her protected activities, Ms. Wood can establish a causal connection because of the close timing between her complaint and her demotion." *Id.* at 24.

■ Title VII prohibits retaliation against employees who engage in protected conduct. *Fabela v. Socorro Ind. School Dist.*, 329 F.3d 409, 414 (5th Cir.2003). As with the disparate treatment claim above, Wood relies upon circumstantial evidence to support her claim. Accordingly, the Court employs the *McDonnell Douglas* three-step, burden-shifting framework described above. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Hockman v. Westward Commc'ns, L.L.C.*, 407 F.3d 317, 330 (5th Cir.2004).

Under this framework, the plaintiff must first establish a prima facie case by presenting evidence that: (1) she engaged in protected conduct, (2) she was thereafter subjected to an adverse employment action, and (3) the adverse employment action was taken in response to her protected conduct. *Hockman*, 407 F.3d at 330. If the plaintiff establishes the prima facie case, the burden then shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse employment action. *Id.* Once such a reason is given, the plaintiff must present evidence showing that the proffered rationale is pretextual and that "engaging in the protected activity was the but-for cause of the adverse employment action." *Id.*

The Fifth Circuit has held that close timing between an employee's protected activity and an adverse action may provide the causal connection required to set out a prima facie case of retaliation. *Strong v. University HealthCare System, L.L.C.*, 482 F.3d 802, 808 (5th Cir.2007); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir.2001). A time lapse of up to four months, standing alone, has satisfied the causal connection for summary judgment purposes. *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 995 (5th Cir. 2005) (citing *Evans*, 246 F.3d at 354); *see also Clark County School Dist. v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (finding that evidence of a time lapse of twenty months alone was far too long to establish causation in the prima facie case and pointing to circuit court cases that have held that the timing must be "very close," less than three or four months, when relying solely on temporal proximity as evidence of causation in

---

5. If Garcia was first informed some time in the summer of 2003 that Wood had engaged in protected activity, and if Wood was demoted in February 2005, then only one year and a half elapsed between the protected activity and the demotion. Defendant's calculation of two years appears to be in error.

a prima facie case of retaliation). In addition, the Fifth Circuit has recently clarified that temporal proximity alone is not sufficient to establish the "but-for" causation in the pretext prong of the analysis. *Strong,* 482 F.3d at 808.

The Fifth Circuit has also held that merely disputing an employer's assessment of a plaintiff's work performance will not necessarily support an inference of pretext. *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 408 (5th Cir.1999). Thus, Wood cannot survive summary judgment merely because she disagrees with the City's characterization of her disciplinary history; rather, the issue is whether CBP's perception of Wood's performance, accurate or not, was the real reason for her termination. *See id.* at 408–09 (emphasis omitted).

The first two prongs are not at issue in this case. It is clear that Wood engaged in protected activity in 2000 and 2002. It is not clear whether the 2003 conversation with Longoria about prior EEOC activity constitutes a protected activity; nevertheless, the Court will assume that it does. There is also no dispute that Wood's demotion constitutes an adverse employment action.

The only issue with regard to the prima facie case is whether Wood has set forth a causal connection. The Court finds that she has not. Ms. Wood's statement in support of her claim of a causal connection is that "Ms. Wood can establish a causal connection because of the close timing between her complaint and demotion." Pl.'s Am. Resp. 23. But Wood forgets to inform the Court just how close the timing was between these two events. In fact, the record reveals that more than one year had elapsed between Wood's engaging in what the Court assumes to be protected

activity in June 2003 and the recommendation for termination in September 2004, and that twenty months had elapsed by the time of the actual demotion in February 2005. Moreover, Wood provides no other evidence or argument to support her claim of a causal connection. A time lapse of one year alone is too remote to establish causation. *See Jones,* 427 F.3d at 995; *Evans,* 246 F.3d at 354. Without a prima facie case, Wood's retaliation claim fails. But even assuming Wood satisfied the elements of the prima facie case, Defendant has set forth a legitimate reason for Wood's termination, namely her misconduct at work. And Wood has failed to provide evidence satisfying her burden of showing that Defendant's evidence was pretextual.

It is undisputed that the allegations of misconduct against Wood were investigated by the Office of Professional Responsibility, reviewed by the Disciple Review Board in Washington, D.C., with a recommendation to DFO Garcia. Only at that time did Garcia decide to demote Wood instead of terminate her. This thorough, multi-party review supports Defendant's contention that it was Wood's misconduct that led to her demotion and not her engaging in protected activity.[6] Wood submits no evidence or argument showing that the charges of misconduct were not the true reason for her demotion. She points only to what she deems to be "close" temporal proximity of more than one year to show but-for causation, even though temporal proximity alone is insufficient to demonstrate pretext in this circuit, and one year is not "close." Accordingly, Wood's retaliation claim must fail.

### III. CONCLUSION

For the reasons set forth above, Defendant's Motion to Strike (Doc. No. 33) is

---

**6.** The Court recognizes that Defendant does not bear the burden of proof regarding its

non-discriminatory reason for the demotion. *See Shackelford,* 190 F.3d at 408.

**DENIED** as moot and Defendant's Motion for Summary Judgment (Doc. No. 21) is **GRANTED.**

The Clerk shall close the case.

**SO ORDERED.**