**UNITED STATES COURT OF APPEALS**

**FIFTH CIRCUIT**

_____

No. 00-20021
_____

CECILIA OKOYE,

Plaintiff - Appellant,

versus

THE UNIVERSITY OF TEXAS HOUSTON HEALTH SCIENCE
CENTER; Et Al,

Defendants,

THE UNIVERSITY OF TEXAS HOUSTON HEALTH SCIENCE
CENTER;

Defendant - Appellee.

Appeal from the United States District Court
For the Southern District of Texas

April 3, 2001

Before DAVIS and EMILIO M. GARZA, Circuit Judges, and POGUE[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

Cecilia Okoye ("Okoye") appeals the district court's grant of summary judgment dismissing

_____

[*]     Judge, U.S. Court International Trade, sitting by designation.

1

her Title VII, 42 U.S.C. § 2000e *et seq*, claim against the University of Texas Houston Health Science Center; et al ("UTHHSC"). We affirm.

**I**

UTHHSC and the Harris County Sheriff's Department entered into a contract in which Harris County paid UTHHSC to provide a medical director, physicians, and specialty nursing services for the detention facilities located in Harris County. Pursuant to the contract, the employees hired by UTHHSC reported to the Medical Director of the Harris County detention facilities, Dr. Michael Seale ("Seale"), who was a UTHHSC employee.[2] While Seale had the authority to impose certain disciplinary sanctions, such as suspension with pay, the contract allocated the ultimate decision-making authority regarding who was allowed access to the detention facilities to the Sheriff or his designee. Section 6(c) of the contract contained the following provision:

> [a]ll personnel provided by the University are subject to review and approval by the Sheriff or his designee. Should any such personnel become undesirable, as determined by the Sheriff or his designee, the Sheriff or his designee will recommend in writing to the University that such person be removed, and the University will forthwith remove such person from the Detention Facilities.

UTHHSC employed Okoye as a professional nurse practitioner for the Harris County jail's female section. Okoye, who is black and a native of Nigeria, claims that she was terminated from her position because of UTHHSC's complicity in Harris County's discrimination against her.

Okoye asserts that she experienced problems with jail employees prior to her termination. Okoye claims that Deputy Higginbotham, a white jail employee, required her to clean her own clinic

---

[2]    The contract, however, also made clear that the employees hired by UTHHSC were not to be considered employees of the County or the Sheriff. *See* Contract § 6(i).

and remove the clinic's trash,[3] and questioned her diagnosis of an inmate complaining of a lump in her breast.[4]  Although Okoye reported Higginbotham's actions to Seale, she did not assert that Higginbotham was discriminating against her.[5]

Okoye's problems with the jail staff culminated when Michelle Bovis ("Bovis"), a white employee of the jail, made a remark indicating that Okoye did not act professionally toward her patients.  While it is not entirely clear what occurred when Okoye approached Bovis to discuss the remark, Okoye admits that she reached out her hands toward Bovis to calm Bovis down.  Bovis, however, complained to Harris County that Okoye assaulted her, and, therefore, Seale suspended Okoye with pay for a week while UTHHSC investigated the incident.  Although Okoye denied assaulting Bovis, at the time she did not claim that the incident with Bovis, or any events precipitating the incident, were the result of discrimination.

Additionally, around the time of her suspension, Okoye removed copies of a medical file from the jail, specifically the file of the inmate Okoye treated for the lump.  Okoye claims that she took the file to substantiate her claims that she did not misdiagnose the patient.  Thereafter, Seale sent Okoye

---

[3]     After Okoye informed UTHHSC that she was required to perform these tasks, UTHHSC addressed the situation with the jail staff.

[4]     The inmate complained to Okoye of a lump in her breast.  Okoye's examination of the inmate did not reveal a lump, and, therefore, Okoye prescribed Motrin for the inmate.  Higginbotham brought Okoye's diagnosis of the inmate to the attending physician's attention.  Although the physician initially believed the inmate had a lump, tests proved that there was no lump.

[5]     Furthermore, Okoye claims that Higginbotham told other employees that Okoye was lazy and incompetent.  In addition, another white jail employee, Lieutenant Overstreet, allegedly spread rumors that Okoye's diagnosis of the inmate with the lump could have led to the inmate's death.  Because these statements are hearsay, they are not competent summary judgment evidence. *See Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995) ("[e]vidence on summary judgment may be considered to the extent not based on hearsay").

3

a memorandum informing her that removing the file was sanctionable conduct, but did not terminate her employment.

On that same day, Major Quinn from the Sheriff's Department invoked § 6(c) of the contract to bar Okoye from the jail. The following day, after unsuccessfully searching for another position for Okoye, UTHHSC informed Okoye that her employment at the jail was terminated due to "performance issues." Subsequently, UTHHSC assigned a black, Jamaican-American woman to fill the nurse practitioner position.

## II

We review the district court's grant of summary judgment de novo. *See Ward v. Bechtel Corp.*, 102 F.3d 199, 201 (5th Cir. 1997). Accordingly, we "may affirm [the district court's decision] on any grounds supported by the record." *McGruder v. Will*, 204 F.3d 220, 222 (5th Cir. 2000). Pursuant to FED. R. CIV. P. 56(c), an action may properly be disposed of by summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."

Okoye claims that UTHHSC discriminated against her by accepting the Sheriff's invocation of § 6(c), and terminating her employment at the jail. The district court granted summary judgment in favor of UTHHSC because it found that the nondiscriminatory reason proffered by UTHHSC for its actions was not a pretext for discrimination. We agree that Okoye failed to meet her burden of raising a genuine issue of material fact that the invocation of § 6(c) was a pretext for discrimination.

## A

Title VII prohibits an employer from "discharg[ing] an individual, or otherwise discriminat[ing] against any individual . . . because of such individual's race, . . . or national origin."

4

42 U.S.C. § 2000e-2(a)(1). Okoye alleges that UTHHSC is liable under Title VII for the actions taken by Harris County employees against her because UTHHSC knew or should have known that Harris County was discriminating against her and did not remedy the situation. Because Title VII addresses employer liability, it is necessary at the outset to determine which entity or entities Okoye is claiming employed her. This preliminary determination will also clarify which allegedly discriminatory acts are relevant to our Title VII inquiry.

Okoye singularly asserts that UTHHSC was her employer; in her reply brief, she refutes UTHHSC's suggestion that she is arguing that Harris County was her employer. In addition, Okoye denies that she is positing a joint employer liability theory.[6] Because UTHHSC is the only entity alleged to have been Okoye's employer, we are solely concerned with whether UTHHSC's conduct is discriminatory.

Although Okoye argues that only UTHHSC is her employer, Okoye urges that Harris County's actions remain relevant because UTHHSC knew or should have known that Harris County was discriminating against her. Okoye relies on two cases, *Williams v. Grimes Aerospace Co.*, 988 F.Supp. 925 (D.S.C. 1997), and *Caldwell v. ServiceMaster Corp.*, 966 F.Supp 33 (D.D.C. 1997), to support this argument. In *Grimes*, a Title VII racial discrimination claim was brought against Grimes, who hired the plaintiff, Margaret Williams ("Williams"), from a temporary employment agency. Williams, a black woman, claimed that Grimes did not hire her for a full time position on account of her race. The district court in *Grimes* determined that Williams was jointly employed by Grimes and the employment agency, but refused to hold the employment agency liable for Grimes's

___

[6] In her reply brief Okoye states that she "need not resort to a joint employer theory because UTHHSC was her employer." In addition, at oral argument, Okoye's counsel reaffirmed that Okoye is not making a joint employer argument.

conduct because the court found no proof that the employment agency knew of Grimes's conduct and failed to take remedial action. *See* 988 F.Supp. at 938.

*Caldwell* also involved a Title VII claim in the joint employer context. The *Caldwell* plaintiffs were employed by ServiceMaster as part of a contractual agreement between ServiceMaster and a second company, Norrell. Although the plaintiffs attempted to hold Norrell liable for the alleged discrimination of ServiceMaster, the court found that Norrell was not liable because Norrell was not alerted to the actions taken by ServiceMaster, and it "took those corrective measures that were within its control." 966 F.Supp. at 48.

Okoye's reliance on *Grimes* and *Caldwell* is misplaced. Okoye does not argue that UTHHSC and Harris County are joint employers, nor does she argue that an agency relationship existed between the two entities. Rather, Okoye contends that UTHHSC, as her sole employer, is liable for Harris County's behavior. However, even were we to assume, *arguendo*, that UTHHSC could be held liable for discriminatory behavior committed by Harris County, Okoye does not meet her burden here.

**B**

In order to survive summary judgment Okoye must raise a "genuine issue as to a[] material fact" that UTHHSC discriminated against her. FED. R. CIV. P. 56(c). To do so, Okoye must satisfy the burden shifting test annunciated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and applied most recently in *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000). As the Supreme Court reaffirmed in *Reeves*, "*McDonnell Douglas* and subsequent decisions have 'established an allocation of the burden of production and an order for the presentation of proof,'"

6

whereby a "plaintiff must [first] establish a prima facie case of discrimination. [After doing so,] [t]he burden [of production] shift[s] to [the defendant] to 'produce evidence that the plaintiff was rejected . . . for a legitimate, nondiscriminatory reason.'" *Id*. at 2106. If the defendant is able to produce a legitimate reason, then the presumption of discrimination vanishes. However, because the burden of persuasion "'remains at all times with the plaintiff,'" the plaintiff is "afforded the opportunity [to demonstrate that an issue of material fact exists and] that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id*.

**i**

Okoye establishes a prima facie case by providing evidence "that she: (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class," or, in the case of disparate treatment, shows "that others similarly situated were treated more favorably."[7] *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999); *see also Rutherford v. Harris County, Tex.*, 197 F.3d 173, 184 (5th Cir. 1999); *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982).

Okoye has met the first three prongs in that she is black and Nigerian, she was qualified for the position, and her employment was terminated. The fourth and final prong requires Okoye to prove that she was replaced by someone outside of her protected class. Okoye argues that she can meet this prong because she is a black, Nigerian woman, and she was replaced by a black, Jamaican woman. Conversely, UTHHSC alleges that Okoye has failed to meet this prong because both Okoye and her replacement are black. Since we decide this case on the issue of pretext, we assume without deciding that Okoye has met this prong of the prima facie case. *See Nieto v. L&H Packing Co.*, 108

---

[7] We discuss Okoye's evidence of disparate treatment in Section II(B)(iii).

F.3d 621, 624 (5th Cir. 1997) (replacement by a member of the same class "'does not negate the possibility . . . [of] discriminat[ion].'").

**ii**

We have assumed that Okoye has met her initial burden; the burden of production now shifts to UTHHSC to provide a "legitimate, nondiscriminatory reason" for concluding Okoye's employment. In order to meet its burden, UTHHSC must provide both "clear and reasonably specific reasons" for its actions. *See Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981).

UTHHSC asserts that Okoye was removed from the jail assignment after the Sheriff invoked § 6(c) of the contract.[8] Section 6(c) did not afford UTHHSC discretion to retain an employee at the jail whom the Sheriff had barred from the jail. Furthermore, UTHHSC claims that Okoye was not retained in another capacity at UTHHSC because an alternative position was not available. UTHHSC's reason for not retaining Okoye was clear and specific—UTHHSC was contractually obligated to defer to the Sheriff's invocation of § 6(c)—and, therefore, UTHHSC has met its burden of production.

**iii**

Okoye must raise a genuine issue of material fact that UTHHSC discriminated against her. *See LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 449 (5th Cir. 1996). Okoye may meet this threshold by proving that an issue of material fact exists through circumstantial evidence, i.e., by

---

[8] Okoye has not alleged, nor is there any evidence to support, that Harris County and UTHHSC entered into this contract for any discriminatory purpose, rather the evidence indicates that the sole purpose of the contract was to provide a medical director, physicians, and specialty nursing services for the detention facilities.

demonstrating that an issue exists that UTHHSC's proffered reason is a pretext for discrimination, or by providing direct evidence of discrimination. *See id.*; *Hall v. Gillman Inc.*, 81 F.3d 35, 37 (5th Cir. 1996). As the Supreme Court acknowledged in *Reeves*, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false" may be sufficient to infer discrimination. 120 S.Ct. at 2109. The Supreme Court has also made clear, however, that "instances [exist] where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.*

Although Okoye conceded at oral argument that she could not prove that the reason provided by UTHHSC was false, she claimed that UTHHSC is nevertheless liable for discrimination because it was complicit in Harris County's allegedly discriminatory invocation of § 6(c).[9] As proof of UTHHSC's complicity, Okoye offers the following evidence: (1) jail employees forced her to perform menial tasks such as sweeping out her clinic and removing the trash; (2) she was subject to disparate treatment; and (3) the reason Major Quinn initially gave for invoking § 6(c) of the contract was false.

First, assuming that requiring Okoye to perform tasks such as sweeping her station and removing the trash indicates that jail employees were discriminating against her, as soon as Okoye informed UTHHSC of the situation, UTHHSC addressed the matter with the jail staff.

---

[9]     Okoye urges that we ignore § 6(c) of the contract because it would allow employers with contractual provisions similar to § 6(c) to escape Title VII liability. This argument, however, was not raised in the district court. Accordingly, this argument is forfeited because Okoye has failed to persuade this Court that on the facts of this case we should exercise our discretion to correct the alleged error. *See Governor & Co. of the Bank of Scotland v. Maria S.J. MV*, 211 F.3d 261, 265 n.3 (5th Cir. 2000) (stating that when a "claim [i]s not presented in district court, the [movants] must show the existence of a plain error that affected their substantial rights, and also must persuade us to exercise our discretion to correct it") (citations omitted).

Second, to establish disparate treatment a plaintiff must show that the employer "gave preferential treatment to [] [another] employee under 'nearly identical' circumstances"; that is, "'that the misconduct for which [the plaintiff] was discharged was nearly identical to that engaged in by . . . [other] employee[s].'" *See Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991); *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (*quoting Davin*, 678 F.2d at 570).

Okoye compares herself to three physicians who were not fired despite committing violations at the jail. These physicians, however, never allegedly assaulted a co-worker. Instead, the white, male physician was accused of being unresponsive to security and nursing needs, not waking himself up to see patients, and being argumentative. The white, female physician, whose contract was not renewed, was accused of being inattentive to nursing needs, being argumentative, falsifying records, and being slow to wake-up. The Asian, male physician was likewise difficult to wake up and performed superficial exams. The facts of Okoye's case are also dissimilar to the physicians' cases because the Sheriff did not bar any of the physicians from the jail, thereby not placing UTHHSC in the position of finding them alternative employment. Accordingly, Okoye cannot demonstrate that her situation was nearly identical to these employees. *See Little*, 924 F.2d at 97 (circumstances were not nearly identical when employees actions were reviewed by different supervisors); *Smith*, 891 F.2d at 1180 (employees who engaged in different violations of company policy were not nearly identical); *Davin*, 678 F.2d at 572 (employees were engaged in different conduct when only one of the employees' inappropriate remarks was considered threatening).

Furthermore, Okoye cites as evidence of disparate treatment: (1) the jail's retention of Overstreet after she allegedly assaulted Okoye; (2) the fact that Higginbotham was commended for questioning Okoye's diagnosis; and (3) that Bovis's version of the incident between herself and

10

Okoye was believed instead of Okoye's version of the incident. None of these incidents can properly be considered indicative of disparate treatment. Okoye did not produce any evidence that Lieutenant Overstreet, Deputy Higginbotham, and Bovis were similarly situated employees. The three were prison officials with different responsibilities than Okoye.

Third, Okoye contends that an inference of discrimination is raised by Major Quinn's statement to another employee that the reason Okoye was barred from the jail was because she removed a medical file, and not because of her incident with Bovis. The employee's statement, however, is unsworn and, therefore, is not competent summary judgment evidence because it does not comply with the requirements of Federal Rule of Civil Procedure 56(e).[10] *See Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305-07 (5th Cir. 1988) (finding that notarized but unsworn affidavit was not competent summary judgment evidence).

On the record here, we cannot conclude that Okoye has met her burden to produce evidence that UTHHSC's reliance on § 6(c) was a pretext for discrimination.

### III

Because Okoye has failed to raise a genuine issue of material fact that her employment with UTHHSC was concluded because of discrimination by UTHHSC, the district court's decision to dismiss her case on summary judgment was proper, and we AFFIRM.

---

[10] We note that even if this were competent evidence, the fact that Harris County may have relied on another equally legitimate reason for barring Okoye from the jail does not indicate that UTHHSC discriminated against her by accepting the Sheriff's invocation of § 6(c).