**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 19, 2010

Lyle W. Cayce
Clerk

No. 09-60469
Summary Calendar

TERRY S. PRIDEAUX

Plaintiff - Appellant

v.

TYSON FOODS, INC

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:08-cv-00042

Before KING, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Terry Prideaux filed suit against his former employer, Tyson Foods, Inc.
("Tyson") alleging retaliation under the Family Medical Leave Act of 1993, 29
U.S.C. § 2601, *et seq.* ("FMLA"). The district court conducted a jury trial, and the
jury returned a verdict in Tyson's favor. Prideaux appeals evidentiary rulings by
the district court and its refusal to order judicial estoppel. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 09-60469

## I. FACTUAL AND PROCEDURAL HISTORY

Prideaux became an employee of Tyson in September 2003, when Tyson acquired the Carthage, Mississippi facility, where Prideaux had been employed since May 1999. In October 2004, Tyson transferred Prideaux to its Pine Bluff, Arkansas facility to serve as that plant's human resources manager.

In March 2005, Tyson received complaints against Prideaux from three female employees alleging sexual harassment at its Pine Bluff facility. In December 2006, those employees filed suit against Tyson (the "Pine Bluff litigation") claiming that they had been sexually harassed by Prideaux. In its answer, Tyson denied the allegations. The parties reached a settlement in October 2007.

In March 2006, Tyson placed Prideaux on a two-week paid suspension. It conducted an internal investigation into the allegations by the female employees and determined that Prideaux had violated the terms of its Harassment and Discrimination Policy. In April 2006, Tyson issued a written reprimand, suspended Prideaux's annual bonus, and warned him that any additional violations would result in further disciplinary action, up to and including termination of his employment.

In September 2006, Prideaux was promoted to the role of complex-wide human resources manager at the Carthage facility. A few weeks after his transfer back to Carthage, Prideaux advised Tyson that he believed that the Carthage facility was not implementing its FMLA policy correctly. Tyson conducted an investigation at the Carthage facility in late 2006, and agreed that its Carthage facility had not been properly tracking

No. 09-60469

some employees' FMLA policy absences. Tyson then corrected the facility's tracking methodology, and gave Prideaux an additional raise.

Shortly thereafter, Prideaux told his boss, John Dilmore, that Tyson needed to do the right thing and pay the employees whose FMLA rights had been violated what was owed to them. Prideaux claims that the following week Dilmore told him that the answer was no; that it would cost too much money and that Tyson would rather fight each case. Prideaux voiced his objection to such an approach.

In March 2007, Tyson received another internal complaint against Prideaux. A security guard at the Carthage plant reported that she had observed Prideaux kissing the hand of another female security guard. Laura Brewster, a member of Tyson's corporate human resources department, investigated the complaint. During the investigation, the security guard who made the initial complaint informed Brewster, that she "didn't see nothing." The security guard whose hand Prideaux kissed stated that she was not offended by his actions. Brewster interviewed Prideaux regarding the allegations and Prideaux admitted to engaging in the alleged behavior. Brewster reported her findings to her supervisors in Tyson's management, who then decided to terminate Prideaux's employment. After being advised of this decision, Prideaux voluntarily resigned from Tyson on March 20, 2007.

Prideaux was then hired by Central Industries, Inc. in its Forest, Mississippi facility. In December 2008, Tyson acquired Central Industries, Inc. After this acquisition, Tyson eliminated and consolidated several positions, including the Safety and Environmental Manager position held by Prideaux.

3

No. 09-60469

Tyson offered Prideaux the opportunity to apply for other jobs at Central Industries. He did so, but was not hired.

Prideaux filed suit on January 18, 2008, and later amended his complaint to state only a claim for retaliation under the FMLA. On May 18-19, 2009, the district court conducted a trial and the jury returned a verdict in Tyson's favor. Prideaux timely appealed.

## II. DISCUSSION

Prideaux claims that the district court erred in rendering various evidentiary rulings and declining to impose judicial estoppel. We review evidentiary rulings and judicial estoppel determinations for abuse of discretion. *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005); *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1138-39 (5th Cir. 1991). "[W]e will reverse a judgment on the basis of evidentiary rulings only where the challenged ruling affects a substantial right of a party." *Jones v. Benefit Trust Life Ins. Co.*, 800 F.2d 1397, 1400 (5th Cir. 1986); FED. R. CIV. P. 61.

A. Judicial Estoppel

Prideaux argues that in the present case Tyson has contradicted its prior representations in the Pine Bluff litigation by alleging that it had knowledge that Prideaux had actually harassed the three female employees. He asserts that the district court abused its discretion in failing to judicially estop Tyson from asserting that Prideaux violated company policy by harassing three female employees at its Pine Bluff facility.

Judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 347 (5th Cir.

2008) (quoting *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003)). The purpose of the doctrine is to "protect [ ] the essential integrity of the judicial process" by reducing the "risk of inconsistent court determinations." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)) (internal quotations omitted). We have recognized at least two requirements to invoke the doctrine: (1) the party's position must be clearly inconsistent with its previous one, and (2) the previous court must have accepted the party's earlier position. *Id.* (citations omitted). A third consideration is "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estoped." *New Hampshire*, 532 U.S. at 751.

Prideaux fails to establish the second requirement, that the court in the Pine Bluff litigation accepted the position advanced by Tyson. Prideaux argues that when the parties in the Pine Bluff litigation arrived at a settlement agreement and moved to dismiss the case, the order of dismissal entered by the district court in that case constituted judicial acceptance of Tyson's position that Prideaux had committed no wrongdoing. But numerous courts in this circuit and others have held that settlements in ordinary civil cases do not require the judicial acceptance of either party's position, and judicial estoppel is therefore not warranted in a later proceeding. *See Rowan Cos., Inc. v. Acadian Ambulance Serv., Inc.*, No. H-05-3400, 2008 WL 1989791, at *5 (S.D. Tex. May 2, 2008) ("Because [the parties] settled their differences prior to trial, the court did not and was not required to make a determination. . . . Judicial estoppel is not warranted here."); *In Re Hunt*, 124 B.R. 200, 207 (N.D. Tex. 1991) ("[J]udicial estoppel does not apply in the case of a settlement. This is because the position

taken in the initial proceeding cannot be viewed as having been successfully asserted."); *see also Fleet Nat'l Bank v. Gray*, 375 F.3d 51, 60-61 (1st Cir. 2004) (party did not "succeed" in prior litigation if it was settled before any substantive proceedings began); *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1038 (2d Cir. 1993) (judicial estoppel is inapplicable when a prior position was asserted in case that resulted in settlement); *Lowery v. Stovall*, 92 F.3d 219, 225 (4th Cir. 1996) ("[J]udicial estoppel does not apply to the settlement of an ordinary civil suit."); *Blanton v. Invo Alloys Int'l, Inc.*, 108 F.3d 104, 110 (6th Cir. 1997) (judicial estoppel is inapplicable when prior position was asserted in case that resulted in settlement).

In the Pine Bluff litigation, the only events that transpired before the settlement were the filing of the initial pleadings by the parties. The parties filed no pre-trial motions and the court did not conduct a hearing or otherwise accept sworn testimony. As such, Tyson was not successful on any prior position and there was no "judicial acceptance." Thus, the district court here did not abuse its discretion by concluding that the dismissal of the Pine Bluff litigation based on the settlement agreement reached by the parties did not warrant judicial estoppel.

B. Motion to Compel

In May 2008, the district court entered a scheduling order setting the discovery deadline for December 8, 2008. On November 25, 2008, Prideaux filed a notice to take Tyson's deposition under Rule 30(b)(6) on the last day of discovery. Tyson proffered John Dilmore to speak on its behalf. During the deposition, Prideaux's counsel questioned Dilmore on matters to which he could not provide a satisfactory answer. On December 19, 2008, Prideaux filed a

No. 09-60469

Motion to Compel requesting that the district court compel Tyson to proffer a proper representative. The district court denied the motion as untimely.

Rule 7.2(B)(2) of the Uniform Local Rules of the Northern and Southern Districts of Mississippi provides that all "discovery motions must be filed sufficiently in advance of the discovery deadline so as not to affect the deadline." UNIF. LOC. R. 7.2(B)(2). Prideaux suggests no good cause for waiting until the last month of the seven-month discovery period to begin the process of taking depositions, thus necessitating the filing of the Motion to Compel after the discovery deadline. The district court did not abuse its discretion in denying the Motion to Compel.

C. Motion for Leave to Take Trial Testimony Telephonically

In May 2009, just two weeks before trial, Prideaux filed a Motion for Leave to Take the Trial Testimony of Laura Brewster Telephonically. Prideaux asserted that Brewster, Tyson's investigator who made an initial determination on whether Prideaux violated Tyson's sexual harassment policy at its Carthage location, was to be one of his primary witnesses. Brewster resided in Springdale, Arkansas at the time of trial, which is over 100 miles outside the jurisdiction of the Southern District of Mississippi, and she was no longer employed by Tyson. Prideaux was therefore unable to subpoena Brewster to testify at trial. The district court denied the motion.

The Federal Rules of Civil Procedure require that witness testimony be presented live, in open court. FED. R. CIV. P. 43(a). An exception may be made where the requesting party can establish "good cause in compelling circumstances. . . ." *Id*. The Advisory Committee Notes state that a party who could "reasonably foresee the circumstances offered to justify the transmission

7

of testimony" will have difficulty in establishing good cause or compelling circumstances. *See* FED. R. CIV. P. 43(a) advisory committee's note. With respect to this standard, Prideaux argues only that Brewster was a "primary witness" and that he had difficulty locating her. On the grounds that Prideaux had failed to show good cause and could not demonstrate compelling circumstances, we conclude that the district court did not abuse its discretion in denying the motion to take trial testimony telephonically.

   D. Motion to Amend the Pre-Trial Order

   Four days before trial, Prideaux filed a Motion to Amend the Pre-Trial Order to add Tyson employee Brian Manley as a witness. Manley would have offered testimony that he was present when Brewster informed Prideaux that she had found there was no merit to the claim of sexual harassment in Carthage. Prideaux asserts that Manley had inadvertently not been included on the witness list. Although Manley had been identified by Tyson in its pre-discovery disclosures, Prideaux failed to reference Manley in his initial disclosures as an individual likely to have discoverable information relevant to his claims and did not list Manley in his response to Tyson's interrogatories as an individual likely to have knowledge of facts and circumstances related to his claims.

   The district court denied the motion, but allowed Prideaux to call Manley as a rebuttal witness if testimony offered during Tyson's case-in-chief warranted his testimony. The district court did not abuse its discretion in denying Prideaux's attempt to add an improperly noticed witness on the eve of trial. *See* FED. R. CIV. P. 37(c)(1).

   E. Motion in Limine Regarding Testimony of Steven W. Patrick

On the second day of trial, Tyson requested to call Steven W. Patrick to present testimony to rebut Prideaux's claim that he had been retaliated against with respect to his termination after Tyson acquired Central Industries. Patrick had not been listed as a witness in the pre-trial order, and Prideaux moved to exclude his testimony on that basis. Tyson responded, somewhat disingenuosly, that because the court had not ruled on its motion in limine to exclude evidence regarding Prideaux's termination from Central Industries, it did not know until the first day of trial that the termination would be a contested issue. The district court denied Prideaux's motion in limine.

The district court's ruling, however, is consistent with its treatment of Prideaux's attempt to present testimony from Manley without having provided proper notice: the court allowed the improperly-noticed witness to be called only as a rebuttal witness if testimony offered during the opposing party's case-in-chief warranted such testimony. The district court did not abuse its discretion in allowing Tyson to elicit rebuttal testimony from Patrick.

F. <u>Tyson's Motion in Limine Regarding Pine Bluff Litigation</u>

After the district court's judicial estoppel ruling, Prideaux persisted in seeking to introduce evidence that Tyson did not actually believe that he had committed the alleged sexual harassment at the Pine Bluff facility. That evidence included Tyson's pleadings in the Pine Bluff lawsuit and testimony from Paul Fletcher, Prideaux's supervisor at the Pine Bluff facility at the time of the alleged sexual harassment. Tyson filed a motion in limine seeking to prevent Prideaux from presenting such evidence, asserting that it would be largely irrelevant and prejudicial. Tyson argued that the sole issue in the case was whether Tyson terminated Prideaux's employment in retaliation for

reporting alleged violations of the FMLA, or whether it terminated Prideaux based on his inappropriate conduct at the Carthage facility after being previously disciplined for similar behavior at the Pine Bluff facility. Thus, Tyson contended, the Pine Bluff events were relevant only to show that Tyson undisputedly issued Prideaux a written disciplinary action and a warning that any further similar actions would result in his termination; whether Tyson conducted a proper investigation of the Pine Bluff incident or imposed appropriate disciplinary action would be irrelevant.

The district court granted the motion in limine on the grounds that the Pine Bluff incident was a collateral issue and "not the case that the jury should be focusing on." Having carefully reviewed the record, we conclude that the Pine Bluff evidence had—at best—marginal relevance, and the district court therefore did not abuse its discretion.

## III. CONCLUSION

The district court's evidentiary rulings were not abuses of discretion. We therefore AFFIRM the judgment of the district court.