# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60223
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 19, 2016

Lyle W. Cayce
Clerk

JACKIE OUTLEY,

Plaintiff–Appellant,

versus

LUKE & ASSOCIATES, INCORPORATED,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi

Before JOLLY, SMITH, and GRAVES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Jackie Outley appeals a summary judgment dismissing her claims of race-based employment discrimination and retaliation. Because she has not presented evidence sufficient to make a *prima facie* case of discrimination or to create a fact issue regarding pretext, we affirm.

I.

Luke & Associates, Inc. ("Luke"), and the Air Force entered into a Clinical Services Support Agreement under which Luke agreed to provide medical

No. 16-60223

personnel to various Air Force facilities, including Keesler Air Force Base. The agreement provided that the Air Force would (1) provide all equipment and supplies used by the medical personnel; (2) direct the manner in which duties were performed; (3) schedule the hours of medical personnel; and (4) supervise all medical personnel.

Luke entered into a Contractor Agreement with Jackie K. Outley, LLC,[1] under which Outley agreed to provide inpatient pharmacy services at Keesler. The agreement provided, in part, that "if Luke should receive a request by the Government that the services of [Outley] be terminated for cause, then such services will be terminated in accordance with such request."

On May 16, 2011, Major Thuy Vo, Outley's Air Force supervisor, submitted a Memorandum for Record, which noted that Outley had prepared and sent intravenous fluids that did not match the physician's order and had ignored the "constructive intervention" of another pharmacist. On May 18, Vo submitted a second memorandum, this time because of an "intensive argument" between Outley and another pharmacist "at the front line of the inpatient pharmacy." Outley and the other pharmacist were "counseled" for "unprofessional behavior" and were informed that the Air Force would file a complaint with Luke if such behavior were repeated. Finally, on July 14, Vo submitted a third memorandum concerning a "Prepacking Error Due to Inattention to Detail," describing Outley's mislabeling of medication.

In August 2011, Air Force staff notified Luke of their concerns regarding Outley's performance. On August 29, Air Force staff met with representatives

---

[1] The parties dispute whether Outley was an independent contractor or an employee of Luke's. This issue bears on whether she has standing to bring a Title VII claim. But because we affirm on the assumption that she could bring her claim, we need not reach this issue.

2

of Luke and with Outley to discuss those concerns and to inform them that Outley would no longer be permitted to work as an inpatient pharmacist. According to Luke, to avoid terminating Outley's contract, it proposed a transfer, and the Air Force and Outley agreed to a transfer in lieu of termination.

Outley denies consenting to that arrangement. She was transferred to an outpatient pharmacy, then in December 2011 to a second outpatient pharmacy. Before that, in October, she requested a "merit adjustment raise." Luke informed her that it was unable to grant the request but that in January it would reassess after discussing her performance with the Air Force.

## II.

On August 11, 2011, Outley had emailed Colonel Richard McBride to notify him of "prejudices/double standards/hostility/harassment and being singled out in the workplace." McBride instructed Outley to "notify both your Contractor and EEO if you honestly feel you are working in a hostile environment." Outley filed a formal complaint with the Air Force on August 29, 2011, then sued, alleging race-based discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.[2]

The district court entered summary judgment for Luke because Outley had not established a *prima facie* case of discrimination. It also found that Luke had provided legitimate, nondiscriminatory reasons for the transfer. With respect to retaliation, the court found that, even assuming that Outley had presented a *prima facie* case, Luke had presented sufficient non-discriminatory reasons. Outley's appeal of the summary judgment also

---

[2] Outley initially named Quarterline Consulting Services, LLC, as a second defendant, but because Outley and that entity settled, the district court addressed only the claims against Luke.

No. 16-60223

challenges the denial of her motion to compel responses to interrogatories.

### III.

Title VII prohibits discrimination "because of" a protected characteristic, including race.  42 U.S.C. § 2000e–2(a)(1).[3]  Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the plaintiff must first demonstrate a *prima facie* case, and then the burden of production shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action.  *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).  If it does that, "the presumption of discrimination disappears."  *Id.*  The plaintiff, who always has the ultimate burden, must then "produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination."[4]

### A.

To establish a *prima facie* case, Outley must provide evidence "that she (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably."[5]  She meets the first two prongs:  She is black and therefore a member of a protected class, and although Luke disputes whether she was qualified as an inpatient pharmacist,

---

[3] Although Outley bases her claims on Title VII and Section 1981, we refer only to Title VII, because "[w]hen used as parallel causes of action, Title VII and [S]ection 1981 require the same proof to establish liability," and "it would be redundant to refer to [both] of them." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999).

[4] *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

[5] *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001) (footnote and quotation marks omitted).

we agree with the district court's inference that her initial hiring demonstrates her qualification. Moreover, Luke's request for her transfer, instead of termination, suggests that she is qualified.

With respect to the third prong, Outley maintains that her transfers from inpatient facilities at Keesler to outpatient facilities constitute adverse employment actions. It is well-settled that a "purely lateral transfer" is not an adverse employment action.[6] A transfer might be purely lateral if the new position had "the same job title, benefits, duties, and responsibilities" as the old position. *Id.* A transfer can be an adverse action if it is "the equivalent of a demotion," such that the new position proves "objectively worse."[7]

In the district court, Outley contended that her transfers were adverse employment actions because her hours were reduced "at times" and her new work schedule was "not as favorable." On appeal, she presents additional evidence that, in her outpatient role, she (1) was unable to work overtime; (2) served up to four times as many patients; and (3) was required to attend training for her new role. As a general rule, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly

---

[6] *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999) ("Our view comports with the clear trend of authority in other circuits holding that a purely lateral transfer is not an adverse employment action.") (quotation marks omitted); *see also Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 331 (5th Cir. 2004).

[7] *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (citing *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612–15 (5th Cir. 2007); *Sharp v. City of Hous.*, 164 F.3d 923, 933 (5th Cir. 1999) (explaining that a transfer "can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement") (citations omitted).

before the district court."[8] This rule extends to *pro se* plaintiffs such as Outley.[9]

Even with the additional facts, Outley's transfers were not adverse employment actions. Merely changing working hours or imposing a higher workload does not qualify.[10] Moreover, Outley's hourly pay remained the same, and she retained her full-time status.[11] The fact that she had to attend training does not mean that the transfer was a demotion; indeed, training may be required for even a coveted promotion. Finally, Outley has presented no evidence that her outpatient role was objectively viewed as less prestigious or desirable than her inpatient role—a fact that is crucial.[12] In sum, Outley has not shown that her transfer resulted in a position that was "objectively worse." *Thompson*, 764 F.3d at 503.

Outley additionally suggests that she suffered an adverse employment action because she was denied a "merit adjustment raise" in October 2011. Although the denial of a pay increase can be an adverse employment action,[13]

---

[8] *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003); *see also Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."); *Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (explaining that it is not necessary "that the entire record in the case . . . be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"); *cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

[9] *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require pro se parties to fundamentally abide by the rules that govern the federal courts. . . . Pro se litigants must properly . . . present summary judgment evidence") (quotation marks omitted).

[10] *See Benningfield v. City of Hous.*, 157 F.3d 369, 376–77 (5th Cir. 1998).

[11] Outley concedes that once she informed Air Force staff that her new schedule resulted in her losing hours, her schedule was changed so that she worked at least forty hours per week.

[12] *Compare Click v. Copeland*, 970 F.2d 106, 110 (5th Cir. 1992) *with Serna v. City of San Antonio*, 244 F.3d 479, 485 (5th Cir. 2001).

[13] *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001), overruled on other

No. 16-60223

Outley did not present that argument in the district court. Assuming *arguendo* that she did, she has satisfied prong three with respect to the denial of her merit adjustment raise.

Outley must next show "that others similarly situated were treated more favorably" with regard to the pay raise,[14] meaning that they must be under "nearly identical circumstances,"[15] which requires that

> the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histor-ies. And, critically, the plaintiff's conduct that drew the adverse employ-ment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.[16]

Even accepting, as true, that other employees received a merit raise, Outley provided no evidence that they were similarly situated to her. In particular, she has not shown that any of them shared her history of on-the-job violations. Thus, she has not established the fourth prong and accordingly has not made a *prima facie* case of discrimination.

## B.

Assuming, again for the sake of argument, that Outley had shown a *prima facie* case, the burden would shift to Luke to provide legitimate, non-discriminatory reasons for its decisions. Those reasons must be "clear and

---

grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

[14] *Okoye*, 245 F.3d at 513. It is possible that Outley could satisfy prong four with regard to her transfer, because she alleges that she was replaced in the inpatient facility by LeRoy Jacobs, who is white. *See Okoye*, 245 F.3d at 513. But even if she had provided evi-dence in support, it would be immaterial because, as we have said, the transfer was not an adverse employment action.

[15] *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

[16] *Id.* (citations omitted); *see also Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001); *Okoye*, 245 F.3d at 514.

7

reasonably specific."[17]  It points to the three memoranda, which document Outley's performance issues.  "Job performance is a legitimate . . . reason for termination." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).  Moreover, under the Contractor Agreement, Luke was required to terminate Outley if the Air Force requested dismissal for cause, which the Air Force did.[18]  Thus, Luke has met its burden of production.

## C.

Continuing to assume a *prima facie* case, the burden would then shift back to Outley to "produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination."  *Laxton*, 333 F.3d at 578.  "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id.* (quotation marks omitted).  As explained above, Outley has not shown disparate treatment, because she has not presented any similarly situated comparators.  Nor does she dispute that she engaged in misconduct.  Although she asserts that one of the memoranda was based on an "incorrect[t]" report by a fellow pharmacist, she offers no response to the other two.

Instead, Outley urges that she faced a "hostile work environment" in the inpatient pharmacy, and that raises an inference of pretext.[19]  She provides eleven examples—none of which was presented to the district court—of times

---

[17] *Okoye*, 245 F.3d at 514 (quoting *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981).

[18] *See id.* at 513 (concluding that defendant had met its burden to show a legitimate, nondiscriminatory reason because it was under a contractual obligation to remove an employee from a jail assignment upon request of the Sheriff).

[19] To the extent Outley's brief can be construed as raising a hostile-work-environment claim under Title VII, such a claim has been waived.  *See Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013).

No. 16-60223

when she faced discrimination. Most of those instances are unrelated to race. For example, she states that Master Sergeant McCune yelled at her and that Major Vo did not intervene. Thus, those examples are not relevant to her race-based discrimination claim.[20]

Outley identifies three instances that, drawing all reasonable inferences in her favor, can be connected to race:

(1) Coworker Stephanie Bosarge referred to Outley as "that."

(2) Vo stated that "Asians and Blacks like to show off."

(3) Coworker Amie Douglas "remarked [that] she had seen security stopping the cars driven by Black people, and asked [Staff Sergeant] Smith, who is Black, 'What'd you all do?'"

That evidence is insufficient to establish pretext. Outley points to comments from three different speakers. She provides no evidence that Bosarge or Douglas had any authority over her transfer or her denied pay increase.[21] Nor has she shown how Vo, employed by the Air Force and not by Luke, had authority to deny her a pay increase. Moreover, the fact that Luke suggested a transfer in lieu of termination weighs against a finding of pretext. In sum, Outley has not met her burden to show that Luke's legitimate, nondiscriminatory reasons are pretext for racial discrimination.

## IV.

*McDonnell Douglas*'s burden-shifting framework also applies to retaliation claims under Title VII. Outley must first establish a *prima facie* case by showing that "(1) she participated in an activity protected under the statute;

---

[20] *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010).

[21] *See Jackson*, 602 F.3d at 380 ("We have explained that comments are evidence of discrimination only if they are . . . made by an individual with authority over the employment decision at issue . . . .").

No. 16-60223

(2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007). It is undisputed that Outley participated in protected activity by complaining to Colonel McBride on August 11. And, as explained above, her denial of a pay increase was an adverse employment action.[22] Finally, the close timing between her protected activity and the denial of a raise—about two months— is sufficient to show causal connection for purposes of a *prima facie* case.[23]

Luke can satisfy its burden to show legitimate, nondiscriminatory reasons by pointing to Outley's performance issues and Luke's contractual obligations. The burden then shifts back to Outley to show that Luke's reasons are pretext for retaliation. She must demonstrate that "the adverse action would not have occurred 'but for' [Luke's] retaliatory motive."[24]

Although the close timing was sufficient to establish a *prima facie* case, it is insufficient to show pretext.[25] Rather, Outley points to evidence that on August 2, 2011, Vo threatened to write an incident report on Outley if she complained about discrimination. Outley did not identify that evidence to the district court in opposing summary judgment. But even assuming she had, she

---

[22] In the district court and on appeal, Outley identified her transfer only as a retaliatory employment action. As explained above, her transfers were not adverse employment actions. Though she did not claim that her denied pay increase was retaliatory, we assume for the sake of argument that she did.

[23] *See Evans v. Hous.*, 246 F.3d 344, 354 (5th Cir. 2001) (noting that "a time lapse of up to four months" may be sufficiently close); *LeMaire*, 480 F.3d at 390 (stating that a lapse of two weeks suggests a causal connection).

[24] *Feist v. La. Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)); *see also Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996).

[25] *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 487 (5th Cir. 2008) ("[T]emporal proximity standing alone is insufficient to establish an issue of fact as to pretext after an employer has provided a non-retaliatory reason.").

No. 16-60223

has not met her burden to show pretext. The connection between Vo's threat and Luke's denial of a merit pay adjustment is too attenuated. Outley provides no evidence that Vo had authority to set Outley's hourly rate; to the contrary, her Contractor Agreement with Luke specifies her compensation. Moreover, her documented performance issues provide a reasonable basis to deny a "merit adjustment raise." In sum, Outley has not provided evidence that "but for" her complaints to the Air Force, Luke would have given a pay raise.

V.

As part of her appeal of the summary judgment, Outley questions the denial of her motion to compel responses to interrogatories. The court denied her motion as untimely because she filed it a week after the deadline for discovery requests. "Discovery rulings are 'committed to the sound discretion of the trial court' and will not be reversed on appeal unless 'arbitrary or clearly unreasonable.'"[26] Outley maintains that the district court abused its discretion because she filed her interrogatories—the object of her motion to compel—on October 19, before the close of discovery. But the Uniform Local Rules of the Northern and Southern Districts of Mississippi require that all "discovery motions must be filed sufficiently in advance of the discovery deadline so as not to affect the deadline."[27] Outley provides no good cause for waiting until the last month of discovery to submit her interrogatories, particularly given that the court had already extended the discovery period by three months. The court did not abuse its discretion in denying the motion to compel.

The summary judgment is AFFIRMED.

---

[26] *McCreary v. Richardson*, 738 F.3d 651, 654 (5th Cir. 2013) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 373, 382 (5th Cir. 1987)).

[27] *Prideaux v. Tyson Foods, Inc.*, 387 F. App'x 474, 478 (5th Cir. 2010) (citing Unif. Loc. R. 7.2(B)(2)). The relevant local rule is currently located at 7(b)(2)(C).