# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20642
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
June 1, 2018

Lyle W. Cayce
Clerk

SHERWIN T. WRIGHT,

　　　　Plaintiff - Appellant

v.

CHEVRON PHILLIPS CHEMICAL COMPANY, L.P.,

　　　　Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-2363

Before JOLLY, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

　　Sherwin T. Wright appeals the grant of summary judgment in favor of his employer, Chevron Phillips Chemical Company, L.P., ("Chevron Phillips") on his discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Texas Commission on Human Rights Act, TEX. LAB. CODE § 21.051(1). Wright claims that he was discriminated against because of his race and in retaliation for complaining about racial discrimination. Because the evidence does not support a finding that the alleged

---

　　* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20642

discriminatory actions were due to his race or in retaliation for complaining of racial discrimination, we AFFIRM.

## I. Background

Wright, an African-American, worked for Chevron Phillips at its Pasadena, Texas, plant as a maintenance electrician from approximately 2008 until December 2014, when Chevron Phillips terminated his employment. His responsibilities included assisting the operations group in "turnaround projects" that required shutting down equipment in a section of the facility so that maintenance and project work could be performed. One of the steps in a turnaround project is referred to as "lock, tag, try," which requires "de-energizing" the equipment, locking it, and tagging it so that it is in a safe state and cannot come back on. Sometimes, the de-energizing process requires disconnecting the wires going from a breaker to a motor, and those wires are referred to as "T-leads." To determine the scope of the work that needs to be completed, employees review an isolation list that identifies the equipment components that need to be isolated. The employee who performs the work is supposed to initial the isolation list to indicate the work for that equipment has been completed. Wright regularly worked on turnaround projects and was familiar with the procedures.

Around late September 2014, the Maintenance Electrical Supervisor, Darryn Barnes, who is also African-American, asked Wright to assist the operations group with the "lock, tag, try" process on a turnaround project. Because this particular project involved replacing breakers, the isolation list specifically required an electrician to disconnect the T-leads. This directive was highlighted in yellow and written in all capital letters. Although Wright initialed the isolation list, he never disconnected the T-leads and never removed his initials from the isolation list.

It was subsequently discovered that Wright did not disconnect the T-leads despite his indication to the contrary on the isolation list. Wright was confronted about the situation at a meeting after which he was suspended without pay pending an investigation into the matter.

Several weeks into his suspension, Wright contacted Chevron Phillips's CEO and asked if he would look into whether the suspension was being handled correctly because no one could tell him how long he was going to be suspended. Wright also expressed disappointment at the way Chevron Phillips was treating him. Shortly thereafter, a human resources employee met with Wright and presented him with a "Final Written Warning and Two-week suspension" letter, which explained the company's conclusion that Wright had violated plant rules when he signed off on the isolation list without disconnecting the T-leads. As a consequence, Wright's continued employment was contingent upon completing a recertification process and not violating any additional plant rules. Wright signed the letter, and under his signature notated his disagreement with some of the letter's factual statements.

A couple weeks later, Chevron Phillips received a report that Wright had fallen asleep in his cubicle while reviewing materials as part of the recertification process. After an investigation, Chevron Phillips concluded that the report was accurate and issued a "Last Chance Letter," which Wright signed. The letter informed Wright that he would be suspended for three days without pay and must, among other things, avoid any warnings for his attendance or tardiness in order to retain his employment with the company.

A few days after signing the Last Chance Letter, Wright failed to appear at work and did not notify his supervisor or anyone else at the company. When his supervisor finally reached him, Wright said he was sick and had advised a third party that manages extended leave and certain employee medical leave. After an investigation, Chevron Phillips determined that Wright was aware of

No. 17-20642

company policy requiring employees to notify their supervisors when taking off work, and that Wright had violated that policy. As a result, Chevron Phillips terminated Wright's employment.

Wright sued Chevron Phillips for race discrimination and retaliation under Title VII, 42 U.S.C. § 1981, and the Texas Commission on Human Rights Act under § 21.051(1) of the Texas Labor Code. The parties agreed to conduct all proceedings before a magistrate judge. The magistrate judge granted summary judgment in favor of Chevron Phillips on all claims, and Wright timely appealed.[1]

## II. Discussion[2]

A. <u>Discrimination Claim</u>

"Title VII prohibits discrimination 'because of' a protected characteristic, including race." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) (quoting 42 U.S.C. § 2000e–2(a)(1)). Discrimination can be established through either direct or indirect evidence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). When considering indirect evidence of discrimination, we apply the familiar *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973),

---

[1] "We review a grant of summary judgment de novo, applying the same standard as the magistrate judge." *Henley v. Edlemon*, 297 F.3d 427, 429 (5th Cir. 2002). "Summary judgment is appropriate if the moving party can show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *United States v. Renda Marine, Inc.*, 667 F.3d 651, 655 (5th Cir. 2012) (quoting FED. R. CIV. P. 56(a)); *Douglas v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc)).

[2] The analysis under both Title VII and § 1981 is identical. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005). Moreover, because one of the general purposes of the Texas Commission on Human Rights Act is to "provide for the execution of the policies of Title VII," Texas courts rely on federal law to interpret the statute. *See In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 308–09 (Tex. 2010). Therefore, we discuss only Title VII law when evaluating Wright's claims. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012) (noting that race discrimination and retaliation claims under all three statutes "are analyzed under the same standard"); *see also Satterwhite v. City of Houston*, 602 F. App'x 585, 589 (5th Cir. 2015) (per curiam) ("[F]or the same reasons [plaintiff's] Title VII claim fails, his TCHRA claim fails.").

burden-shifting framework, which requires the plaintiff to first establish a prima facie case of discrimination by meeting four prongs. *Laxton*, 333 F.3d at 578.

Relevant here is the fourth prong requiring that the plaintiff provide evidence that he "was replaced by someone outside the protected class, or, in the case of disparate treatment, show that others similarly situated were treated more favorably." *Outley*, 840 F.3d at 216 (quoting *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001)). Both the comparator and the conduct must be "nearly identical" (except for the protected characteristic) to the person and situation in question yet the two yielded dissimilar results. *Id.* at 217–18 (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)).

Wright argues that he was treated less favorably than others similarly situated, specifically "other persons involved in the . . . incident giving rise to [his] suspension," any other employee who had ever returned to work from a suspension, and two employees who were terminated for intentionally sleeping on the job. Even assuming *arguendo* that Wright provided sufficient evidence in support of the first three prongs of his prima facie case, he has failed to create a genuine issue of material fact as to the fourth prong. He points to no evidence that any of his comparators were outside his protected class,[3] held

---

[3] In his brief in opposition to summary judgment before the magistrate judge—but not in his briefing on appeal—Wright identified two individuals involved with the suspension incident, Darryn Barnes and Billy Donnell, as being white. However, he provided no evidence to support this assertion. "As a general rule, '[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.'" *Outley*, 840 F.3d at 217 (quoting *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)). Nevertheless, Chevron Phillips presented a declaration from Barnes to the magistrate judge stating that he is an African-American. But there still remains no evidence about Donnell.

In the same brief—but not in his briefing on appeal—Wright also pointed to evidence that there had only been two previous African-American union members of the "International Brotherhood of Electrical Workers" at Wright's workplace, but he did not point to specific evidence that any of the non-black union members had previously returned from suspension.

the same job responsibilities as he did, shared the same supervisor or had their employment status determined by the same person, or had essentially comparable violation histories.  Moreover, there is no evidence that anyone else received dissimilar treatment for "nearly identical" conduct.  Though there was evidence of other employees sleeping on the job receiving dissimilar treatment, those employees engaged in conduct more egregious than Wright's and thus received *less favorable* treatment than Wright did, as the evidence indicates they were terminated rather than given a last chance letter.  Wright does not argue that he was replaced with someone outside of his protected class.  Accordingly, Wright has failed to raise a material fact issue regarding the fourth prong of his prima facie case.  *See id.* at 218.[4]   Wright's discrimination claim cannot survive summary judgment on this record.

B. Retaliation Claim

We also apply the *McDonnell Douglas* burden-shifting framework to retaliation claims.  *See Willis v. Cleco Corp.*, 749 F.3d 314, 317–18 (5th Cir. 2014).  A plaintiff establishes a prima facie case of retaliation by showing "(1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Id.* (quoting *Davis v. Dall. Area Rapid Transit,* 383 F.3d 309, 319 (5th Cir. 2004)).  We have "consistently held

---

Finally, there is no record evidence of the race of the two employees who were fired for intentionally sleeping on the job.

[4] Alternatively, Wright argues that we should conclude that he suffered adverse employment actions due to his race because there is evidence that, nearly a month before his suspension, someone hung a noose in the plant where he worked, and Wright was the only African-American electrician.  But the evidence of this incident does not indicate that Chevron Phillips's decision-makers evinced racial animus.  It is quite the contrary.  The evidence referred to by Wright consists of a letter from the plant manager notifying employees of the incident, expressing zero tolerance for the egregious conduct, and seeking to find and punish the perpetrator.  There is no evidence suggesting a connection between this incident and Chevron Phillips's actions against Wright.

that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Paske v. Fitzgerald*, 785 F.3d 977, 986 (5th Cir. 2015) (quoting *Davis v. Dall. Indep. Sch. Dist.,* 448 F. App'x. 485, 493 (5th Cir. 2011) (per curiam) (collecting cases)).

Wright concedes that he did not report any incidents of racial discrimination to Chevron Phillips. His only allegedly protected activity was sending an e-mail to Chevron Phillips's CEO about whether his suspension was being handled correctly because no one could tell him how long he was going to be suspended and his expectation for Chevron Phillips to treat him better. There was no suggestion that his concerns were related to race. Accordingly, he failed to point to sufficient evidence supporting the first prong of his prima facie case. *See id.* (affirming summary judgment on a Title VII retaliation claim where there was no evidence the plaintiff spoke out about race discrimination).

AFFIRMED.